**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ANHEUSER-BUSCH BEER LABELING, MARKETING AND SALES PRACTICES LITIGATION** | **MDL DOCKET No. 2448**<br>**ALL CASES** |
| | **Judge Donald C. Nugent** |
| **This Document relates to: ALL CASES** | |

**<u>PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

All Plaintiffs bring this action, individually and on behalf of all other similarly-situated members of the public, against Anheuser-Busch Companies, LLC ("AB" or "Defendant"), for compensatory damages, restitution, and equitable, injunctive and declaratory relief.  Plaintiffs allege, on information and belief except for information regarding their individual facts, as follows:

## NATURE OF THE ACTION

1.     Defendant AB makes claims about the alcohol content of some of its malt beverages on their labels.  In most instances, AB's decisions to make such claims are purely voluntary.  AB's claims are false in every instance and are based on its uniform corporate policy of overstating the amount of alcohol in those products.  Using highly advanced process control instrumentation and corporate protocols, AB can and does identify and control, with great accuracy and precision, the exact alcohol content of each bottle or can of malt beverage it sells, but it nevertheless intentionally misrepresents those malt beverages as having greater amounts of alcohol than they actually contain.  AB has already admitted that most of its products actually contain less alcohol than stated on its labels.[1]  By falsely representing the alcohol content of its malt beverages, AB has violated state and federal consumer protection and warranty statutes as set forth below.

//

//

//

---

[1] *See* AB's Opposition to Motion to Transfer, *MDL 2448*, Dkt. No. 17, p. 8.

- 1 -

## JURISDICTION, VENUE, AND PARTIES

2.      The instant case comprises eight class actions brought by Plaintiffs, individually and on behalf of other similarly-situated consumers, arising out of AB's uniform corporate policy of overstating the alcohol content of its products.

3.      This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 "(CAFA"), 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is complete diversity of citizenship.

4.      Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b)(2) because the Ohio plaintiffs reside within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendant caused harm to class members residing in this district.  Further, the non-Ohio cases were transferred to this district by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 14007 for pretrial proceedings.

5.      AB is a Delaware limited liability corporation, wholly owned and controlled by Anheuser-Busch InBev SA/NV, a publicly-traded company (NYSE: BUD).  Anheuser-Busch InBev SA/NV was formed in November of 2008 following the merger of InBev and Anheuser Busch.  AB's principal place of business is in St. Louis, Missouri.

**The California Plaintiffs**

6.      At all relevant times, Plaintiff Nina Giampaoli resided in, and continues to reside in, Sonoma County, California.  During the relevant time period, Giampaoli purchased AB's malt beverage products in reliance on the representations contained on their labels.  Specifically, Giampaoli purchased approximately one six-pack of Budweiser per week during the past four years at retailers such as Safeway and 7-Eleven in Sonoma County, California. Each bottle or can of Budweiser she purchased had a claim set forth on the label that the alcohol content of the beer was 5.0 percent by volume.  Giampaoli has since learned that these claims of 5.0 percent alcohol were all overstated.  Giampaoli took AB's stated percentage of alcohol into account in making her purchases and would not have purchased Budweiser had she known that AB's

representations were false.  Based on Defendant's representations and claims, Giampaoli purchased beer that had less value than what she paid, and she has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.  After learning the truth about AB's mislabeling of Budweiser, Giampaoli decided to stop purchasing it.  However, Giampaoli might resume purchasing Budweiser if and when she learns that it is accurately labeled.

7.      At all relevant times, Plaintiff John Elbert resided in, and continues to reside in, Sonoma County, California.  During the relevant time period, Elbert purchased AB's malt beverage products in reliance on the representations contained on their labels.  Specifically, Elbert regularly purchased Budweiser during the past four years at various retailers in Sonoma County, California.  Each bottle or can of Budweiser he purchased had a claim set forth on the label that the alcohol content of the beer was 5.0 percent by volume.  Elbert has since learned that these claims of 5.0 percent alcohol were in all cases overstated.  Elbert took AB's stated percentage of alcohol into account in making his purchases and would not have purchased Budweiser had he known that AB's representations were false.  Based on AB's representations and claims, Elbert purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by AB's misconduct.  After learning the truth about AB's mislabeling of Budweiser, Elbert decided to stop purchasing it.  However, Elbert might resume purchasing Budweiser if and when he learns that it is accurately labeled.

8.      At all relevant times, Plaintiff Tony Maravilla resided in, and continues to reside in, Contra Costa County, California.  During the relevant time period, he purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, Maravilla regularly purchased Budweiser during the past four years at various retailers in Contra Costa County, California.  Each bottle or can of Budweiser he purchased had a claim set forth on the label that the alcohol content of the beer was 5.0 percent by volume.  Maravilla has since learned that these claims of 5.0 percent alcohol were in all cases overstated.  Maravilla took AB's

- 3 -

stated percentage of alcohol into account in making his purchase decisions and would not have purchased Budweiser had he known that AB's representations were false.  Based on Defendant's representations and claims, Maravilla purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by AB's misconduct.  After learning the truth about AB's mislabeling of Budweiser, Maravilla decided to stop purchasing it.  However, Plaintiff might resume Budweiser if and when he learns that it is accurately labeled.

**The Ohio Plaintiffs**

9.     At all relevant times, Plaintiff Joseph Hopkins resided in, and continues to reside in, the City of Cleveland, Cuyahoga County, Ohio.  During the relevant time period, Hopkins purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, Hopkins regularly purchased multiple packs of Budweiser and Bud Ice during the past four years at retailers such as Giant Eagle and Marc's. Each bottle or can of Budweiser and Bud Ice he purchased had a claim set forth on the label that the alcohol content of that beer was, respectively, 5.0 percent and 5.5 percent by volume.  Hopkins has since learned that these claims of 5.0 percent and 5.5 percent alcohol were in all cases overstated.  Hopkins took AB's stated percentage of alcohol into account in making his purchases and would not have purchased AB's beer had he known that AB's representations were false.  Based on Defendant's representations and claims, Hopkins purchased Budweiser and Bud Ice that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by AB's misconduct.  After learning the truth about AB's mislabeling of Budweiser and Bud Ice, Hopkins decided to stop purchasing them.  However, Hopkins might resume purchasing them if and when he learns that they are accurately labeled.

10.     At all relevant times, Plaintiff Miguel Figueroa resided in, and continues to reside in, the City of Cleveland, Cuyahoga County, Ohio.  During the relevant time period, Figueroa purchased AB's malt beverage products in reliance on the representations contained on AB's

- 4 -

labels.  Specifically, Figueroa regularly purchased multiple packs of Budweiser during the past four years at retailers such as Dave's and Giant Eagle.  Each bottle or can of Budweiser he purchased had a claim set forth on the label that the alcohol content of that beer was 5.0 percent by volume.  Figueroa has since learned that these claims of 5.0 percent alcohol were in all cases overstated.  Figueroa took AB's stated percentage of alcohol into account in making his purchases and would not have purchased Budweiser had he known that AB's representations were false.  Based on Defendant's representations and claims, Figueroa purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by AB's misconduct.  After learning the truth about AB's mislabeling of Budweiser, Figueroa decided to stop purchasing it.  However, Plaintiff might resume purchasing Budweiser if and when he learns that they are accurately labeled.

11.    At all relevant times, Plaintiff Nicole Mangle resided in, and continues to reside in, the City of Cleveland, Cuyahoga County, Ohio.  During the relevant time period, Mangle purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, Mangle regularly purchased multiple packs of Budweiser and (more recently) Bud Light Platinum during the past four years at retailers such as Dave's and Giant Eagle.  Each bottle or can of Budweiser and Bud Light Platinum she purchased had a claim set forth on the label that the alcohol content of that beer was 5.0 percent and 6.0 percent by volume.  Mangle has since learned that these claims of 5.0 percent and 6.0 percent alcohol were in all cases overstated.  Mangle took AB's stated percentage of alcohol into account in making her purchases and would not have purchased AB's beer had she known that AB's representations were false.  Based on AB's representations and claims, Mangle purchased beer that had less value than what she paid, and she has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.  After learning the truth about AB's mislabeling of Budweiser and Bud Light Platinum, Mangle decided to stop purchasing them.  However, Mangle might resume purchasing them if and when she learns that they are accurately labeled.

- 5 -

### The Colorado Plaintiff

12.     At all relevant times, Plaintiff Joel Richardson resided in, and continues to reside in, Jefferson County, Colorado.  During the relevant time period, Richardson purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, Richardson regularly purchased AB products, including Budweiser, Bud Light Lime, Bud Light Platinum, Michelob Ultra and Natural Ice, during the past four years at various retailers in Colorado.  Each bottle or can of Budweiser he purchased had a claim set forth on the label that the alcohol content of the beer was 5.0 percent by volume.  Each bottle or can of Bud Light Lime he purchased had a claim set forth on the label that the alcohol content of the beer was 4.2 percent by volume.  Each container of Bud Light Platinum he purchased had a claim set forth on the label that the alcohol content of the beer was 6.0 percent by volume.  Each bottle or can of Michelob Ultra he purchased had a claim set forth on the label that the alcohol content of the beer was 4.2 percent by volume.  Each bottle or can of Natural Ice he purchased had a claim set forth on the label that the alcohol content of the beer was 5.9 percent by volume.  Richardson has since learned that these claims of alcohol content by volume were in each case overstated. Richardson took AB's stated percentage of alcohol into account in making his purchases and would not have purchased AB's beers had he known that AB's representations were false.  Based on Defendant's representations and claims, Richardson purchased beers that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by AB's misconduct.  After learning the truth about AB's mislabeling of the above-referenced beers, Richardson decided to stop purchasing them.  However, Richardson might resume purchasing them if and when he learns that they are accurately labeled.

### The Texas Plaintiff

13.     At all relevant times, Plaintiff Michael Seidenstein resided in, and continues to reside in, Collin County, Texas.  During the relevant time period, Seidenstein purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically,

Seidenstein purchased approximately one six-pack or twelve-pack of Bud Light Platinum, Bud Light Lime or Michelob Ultra per month during the past four years at various retailers (Seidenstein has, of course, only included Bud Light Platinum among his purchases since it entered the market).  On the occasions that Seidenstein purchased Bud Light Platinum, he specifically did so because of its higher alcohol content.  The Bud Light Platinum he purchased claimed on its labels that its alcohol content was 6.0 percent by volume.  The Bud Light Lime he purchased claimed on its labels that its alcohol content was 4.2 percent by volume.  The Michelob Ultra he purchased claimed on its label that its alcohol content was 4.2 percent by volume.  Seidenstein has since learned that these alcohol content claims were uniformly false in that the beers actually had lower alcohol content by volume.  Seidenstein took AB's stated percentage of alcohol into account in making his purchases, and he would not have purchased AB's beers had he known that AB's representations were false.  Based on AB's representations and claims, Seidenstein purchased beers that had less value than their value as warranted (the amount he paid), and he has accordingly suffered legally cognizable damages proximately caused by AB's misconduct.  After learning the truth about AB's mislabeling of Bud Light Platinum, Bud Light Lime and Michelob Ultra, Seidenstein stopped purchasing them.  However, Seidenstein might resume purchasing them if and when he learns that they are accurately labeled.

### **The New Jersey Plaintiff**

14.     At all relevant times, Plaintiff Brian Wilson resided in, and continues to reside in, Gloucester Township, Camden County, New Jersey.  During the relevant time period, Wilson purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, Wilson purchased approximately one case of Michelob Ultra per month during the past four years at retailers licensed by the State of New Jersey to sell malt beverage products.  Each bottle or can of Michelob Ultra he purchased had a claim set forth on the label that the alcohol content of the beer was 4.2 percent by volume.  Wilson has since learned that these claims of 4.2 percent alcohol were in all cases overstated. Wilson took AB's stated

percentage of alcohol into account in making his purchases and would not have purchased Michelob Ultra had he known that AB's representations were false.  Based on AB's representations and claims, Wilson purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

### The Pennsylvania Plaintiffs

15.     At all relevant times, Plaintiffs Thomas Greenberg and Gerald Greenberg resided in, and continue to reside in, Montgomery County, Pennsylvania.  During the relevant time period, the Greenberg Plaintiffs purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, Thomas Greenberg purchased approximately 2 cases of Budweiser per month during the past four years at retailers licensed by the Commonwealth of Pennsylvania to sell malt beverage products by the case.  Gerald Greenberg purchased approximately 4 cases of Budweiser per month during the past four years at retailers licensed by the Commonwealth of Pennsylvania to sell malt beverage products by the case. Each bottle or can of Budweiser they purchased had a claim set forth on the label that the alcohol content of the beer was 5.0 percent by volume.  The Greenberg Plaintiffs have since learned that these claims of 5.0 percent alcohol were in all cases overstated.  The Greenberg Plaintiffs took AB's stated percentage of alcohol into account in making their purchases and would not have purchased Budweiser had they known that AB's representations were false. Based on AB's representations and claims, the Greenberg Plaintiffs purchased beer that had less value than what they paid, and they have accordingly suffered legally cognizable damages proximately caused by AB's misconduct.

### The Florida Plaintiff

16.     During the relevant time period, Plaintiff Lucius Tison King purchased AB's malt beverage products in reliance on the representations contained on AB's labels.  Specifically, King purchased approximately one case of Budweiser per month during the past four years at

- 8 -

retailers licensed by the State of Florida to sell malt beverage products.  Each bottle or can of Budweiser he purchased had a claim set forth on the label that the alcohol content of the beer was 5.0 percent by volume.  King has since learned that these claims of 5.0 percent alcohol by volume were in all cases overstated.  King took AB's stated percentage of alcohol into account in making his purchases and would not have purchased Budweiser had he known that AB's representations were false. Based on AB's representations and claims, King purchased beer that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.  After learning the truth about AB's mislabeling of Budweiser, King stopped purchasing it.  However, King might resume purchasing Budweiser if and when he learns that it is accurately labeled.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

17.     AB possesses sophisticated process control technology that enables it to precisely identify and control the exact alcohol content of its malt beverages to within hundredths of one percent (i.e., 0.01%).  Because water is cheaper than alcohol, AB adds extra water to its finished products to produce malt beverages that consistently have significantly lower alcohol content than the percentages displayed on its labels.  By doing so, AB is able to produce a significantly greater volume of beer from the same starting batch of ingredients. However, consumers receive watered down beer containing less alcohol than is stated on the labels of AB's products.

18.     There are no impediments – economic, practical or legal – to AB accurately labeling its products to reflect their true alcohol content. Nevertheless, AB uniformly misrepresents and overstates that content.

19.     On information and belief, AB mislabels the alcohol content in the same manner for at least the following products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."  These products are identical for the purposes of this lawsuit, which challenges only AB's practice of overstating the percentage of a single

- 9 -

component – alcohol by volume.  AB waters down these products in the same fashion – at the final stages of production using Anton Paar meters (i.e. "in-line" densitometers).  Further, AB mislabels each of these products in the same manner.  Accordingly, there are no relevant differences in these products as far as the allegations in this complaint are concerned, and consumers of each of the aforementioned products suffered the same injury-in-fact based on the same conduct.

20.     AB's uniform misrepresentations deceive reasonable consumers and allow AB to gain an unfair competitive advantage in violation of state and federal law.

**AB's Size and Scope**

21.     AB's parent company, Anheuser-Busch InBev SA/NV, is the world's largest producer of alcoholic beverages. In 2012, its global production exceeded 10.6 billion gallons of malt beverages, on which it generated gross profits of more than $23 billion.  In the United States alone, ABI operates 13 breweries and produced over 3.3 billion gallons of malt beverages last year.  In 2012, AB's new high-alcohol product, Bud Light Platinum (6.0% ABV), was the top new beer brand in the United States.[2]

//

//

---

[2] Anheuser-Busch InBev 2012 Annual Report. Available online at http://www.ab-inbev.com/pdf/AR12/BUD_AR12_EN_Online_v2.pdf

- 10 -

### The Brewing Process for Malt Beverages

22.     AB processes each batch of malt beverages utilizing what it terms "high gravity," meaning that certain key variables, such as alcohol content, are initially kept at specifications above the desired final product.

23.     At the heart of any alcoholic beverage process is "fermentation." This process involves yeast converting certain carbohydrates into ethanol (intoxicating alcohol to humans), and CO2 (carbon dioxide for carbonation). It is the expensive and time-consuming fermentation process that creates the alcohol in the beverage, and it is this by-product, ethanol, which drives demand for alcoholic malt beverages, and creates the economic incentive for AB to "water down" and mislabel its malt beverages.

### AB's Deliberate Misrepresentations

24.     Sometime prior to 2008, AB began using in-line alcohol measuring instruments known as Anton Paar meters, which allow AB to constantly measure the alcohol content of malt beverages to within a few hundredths of one percent (i.e. + or - 0.01%) during production.

25.     But AB does not use this precision technology, and resulting high accuracy, to provide consumers with exactly the amount of alcohol stated on its labels. Instead, AB uses its precise knowledge of the alcohol content of its products to deceive consumers. During AB's "finishing adjustment process," the last process the malt beverage undergoes before it is packaged, AB waters down its products. Specifically, AB uses its technological prowess to target alcohol content that is consistently lower than the levels it promises on its labels.

26.     If AB chose to, it could use its Anton Paar meters to target the exact alcohol content of its finished products to conform to the representations on its labels. Conversely, since AB knows the precise alcohol content of each of its products, it could conform its labels for each such product to accurately state that content. Instead, and even though AB knows the true alcohol content of its products, it intentionally and falsely overstates the alcohol content of its malt beverages. AB never intends for the malt beverage to possess the amount of alcohol that is

- 11 -

stated on the label. As a result, AB's customers are overcharged for watered-down beer, and AB is unjustly enriched by the substantial additional volume of beer it can sell.

27.    AB's conduct is intentionally deceptive and violates consumer protection statutes prohibiting consumer deception. It also violates Federal and state warranty statutes. Moreover, AB is subject to various specific requirements for accuracy and honesty when claiming alcohol content of products sold to the general public. AB's failures to comply with these requirements, in addition to its voluntary misrepresentations about the alcohol content of its malt beverages, are unlawful.

### The Regulatory Framework

28.    Enacted in 1935, the Federal Alcohol Administration Act ("FAAA"), 27 U.S.C. §§ 201, *et seq*., requires, among other things, that alcohol "labeling and advertising provide adequate information to the consumer concerning the identity and quality of the product" to "prevent misleading labeling or advertising that may result in consumer deception regarding the product." 27 U.S.C. § 205(e) prohibits the labeling of malt beverages with deceptive, false or misleading statements.

29.    Likewise, 27 C.F.R § 7.29(a)(1) prohibits the labeling of malt beverages which contain "any statement that is false or untrue in any particular, or that, irrespective of falsity, directly or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression."

30.    27 C.F.R § 7.54(a)(1) provides that no advertisements of malt beverages may contain "any statement that is false or untrue in any material particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression."

31.    Under these provisions, a brewer need not make any representations whatsoever about the alcohol content of its products. However, if the brewer chooses to voluntarily to make such representations, they must be accurate, not false, untrue or misleading. Accordingly, since

- 12 -

AB voluntarily labels its products with their various alcohol by volume, the labels must be accurate, not false, untrue or misleading.

32.     The federal regulation for statements of alcohol content, 27 C.F.R. § 7.71(c)(1), does not provide AB with a "Get out of jail free card." Rather, it only identifies a *tolerance*, which is a manufacturing term of art.  27 C.F.R § 7.71(b)(2) provides: "For malt beverages containing 0.5 percent or more alcohol by volume, statements of alcoholic content shall be expressed to the nearest one-tenth of a percent, subject to the tolerance permitted by paragraph (c)(1) and (2) of this section." The regulations further state:  "For malt beverages containing 0.5 percent or more alcohol by volume, a tolerance of 0.3 percent will be permitted, either above or below the stated percentage of alcohol."  *Id.* at § 7.71(c)(1).

33.     The Alcohol and Tobacco Tax and Trade Bureau ("TTB"), formerly known as the Bureau of Alcohol Tobacco and Firearms ("ATF"), part of the Department of Treasury, is the federal agency responsible for implementing the FAAA.  The TTB has clarified the proper intent and permitted use of tolerances. "The intent of these tolerances is to provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the consumer." TTB Procedure 2004-1.

34.     58 FR 21228-01 similarly provides that "[t]his tolerance permits *normal variations* in the production of beer, ale, and so forth brought about by differences in raw materials and brewing practices." (emphasis added).

35.     Here, Plaintiffs allege that AB's overstatements of alcohol content are not due to any "normal production and analytical variables" or "normal variation in the production of beer"

- 13 -

because AB has eliminated all normal production variables before deliberately watering down its beer.  When AB adds water at the final stages of production, it is not to adjust the alcohol content to exactly what is stated on its labels – giving the consumer exactly what is promised.  Rather, it is a conscious, intentional decision to dilute the finished product to an alcohol level significantly below the labeled level, thus saving costs and deceiving customers.[3]

36.     On May 28, 2013, the TTB issued a new ruling, TTB Ruling 2013-2, expanding the scope of TTB Procedure 2004-1 to include "[t]ruthful, verifiable numerical statements of alcohol content" on the "Serving Facts" portion of malt beverage labels.  While AB has not begun adding statements of alcohol content to the "Serving Facts" section of any label, this new ruling makes it clear that the same tolerance procedures and regulations will apply to those statements of alcohol content as well:

> **C. Tolerances and Other Laboratory Procedures**
> TTB Procedure 2004–1 sets forth the methods that TTB uses to test the calorie, carbohydrate, protein and fat content of wines, distilled spirits, and malt beverages in order to verify labeling and advertising claims. This procedure also addresses tolerance ranges with regard to labeled statements of calorie, carbohydrate, protein and fat content. This procedure applies to statements made in accordance with this ruling. Tolerances for alcohol content statements, expressed as a percentage of alcohol by volume, are set forth in the regulations at 27 CFR 4.36, 5.37 and 7.71.

37.     The Treasury Department's rules and regulations also provide in pertinent part,

> In § 7.71(b)(1), ATF is requiring alcoholic content to be labeled as percent alcohol by volume in order to be consistent with §§ 4.36

---

[3] While vehemently criticizing this action in the press, AB has admitted in its briefings that most of its products contain less alcohol than what is stated on the label. *See* AB's Opposition to Motion to Transfer, *MDL 2448*, Dkt. No. 17, p. 8.

and 5.37 which require alcoholic content to be expressed in percent alcohol by volume on wine and distilled spirits labels. ATF believes it will be easier for consumers to compare the alcoholic content of a malt beverage with the alcoholic content of wines and distilled spirits, as well as with other malt beverages, if all statements of alcoholic content use the same units of measurement. ***ATF is not providing for a range of alcoholic content to be used in the labeling of malt beverages (such as 'contains not more than 5.0% alcohol by volume')***. ATF believes that labeling with a range would not provide as much accuracy and would be less useful to consumers than an actual statement of alcoholic content.

58 FR 21228-01 (emphasis added).

38. The concept of a manufacturing tolerance has also been specifically defined by the National Institute of Standards and Technology ("NIST"), "the agency within the United States Department of Commerce directed by Congress to develop national standards of measurement." (15 U.S.C. § 272(b)(2)). All states in this action have adopted the NIST standards. *See, e.g.,* Ohio Rev. Code Ann. § 1327.49 (OH); C.R.S.A. § 35-14-105 (CO); 3 Pa. Cons. Stat. Ann. § 4110 (PA); N.J. Stat. Ann. § 51:1-61 (NJ); Tex. Agric. Code Ann. § 13.114 (TX); Fla. Stat. Ann. § 531.40 (FL).

39. Like the TTB, the NIST prohibits the deliberate manipulation of production facilities to take improper advantage of tolerances. The NIST has issued Handbook 44, entitled "Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices," the aim of which is to eliminate the perpetration of fraud. Handbook 44 applies to AB since it uses Anton Paar meters, which are weighing and measuring devices. Section 2.3 states, "Equipment owners should not take advantage of tolerances by deliberately adjusting their equipment to have a value, or to give performance, at or close to the tolerance limit. Nor should the repair or service personnel bring equipment merely within tolerance range when it is possible to adjust closer to zero error."

40. According to NIST Handbook 44, a tolerance is "a value fixing the limit of allowable error or departure from true performance or value." *Id.* at D-27. Further, Handbook 44

- 15 -

makes abundantly clear, the purpose of its technical requirements is to eliminate from use weights, measures and devices that "facilitate the perpetration of fraud." *Id.* at p. 1. Furthermore, the Handbook's User Guide states, "Whenever equipment is adjusted, the adjustments shall be so made as to bring performance errors as close as practicable to zero value."

41.     Under the laws of each of the states at issue here, producers like AB must adhere to NIST tolerance standards and are prohibited from engaging in deliberate manipulation of their equipment in order to set a value at or close to the tolerance limit when it is possible to target the stated content with great precision.  *See, e.g.,* Ohio Rev. Code Ann. § 1327.49 (OH); C.R.S.A. § 35-14-105 (CO); 3 Pa. Cons. Stat. Ann. § 4110 (PA); N.J. Stat. Ann. § 51:1-61 (NJ); Tex. Agric. Code Ann. § 13.114 (TX); Fla. Stat. Ann. § 531.40 (FL) (expressly incorporating NIST standards, including Handbook 44).

42.     By deliberately manipulating the brewing process to achieve a finished product with significantly lower alcohol content than what is stated on the labels, AB not only contravenes the foregoing NIST standards and TTB regulations, it violates state and federal consumer protection and warranty statutes.

## CLASS ACTION ALLEGATIONS

43.     Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), the California Plaintiffs bring this action individually and on behalf of all others similarly situated.  The California Plaintiffs will seek certification of the following class ("Nationwide Class"):

> All consumers residing in the 48 contiguous states who purchased at retail for offsite personal, family or household purposes and not for re-sale, within five years before the date this suit was filed, one or more of the following Anheuser-Busch Companies, LLC products which were manufactured in the state of Missouri: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

44.     The California plaintiffs will also seek certification of the following class

("California Class"):

> All consumers residing in California who purchased at retail in the State of California for offsite personal, family or household purposes and not for re-sale, within four years before the date this suit was filed, one or more of the following Anheuser-Busch Companies, LLC products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

45.     The Colorado plaintiff will seek certification of the following class ("Colorado Class"):

> All consumers residing in Colorado who purchased at retail in the State of Colorado for off-site personal, family or household purposes and not for re-sale, within three years before the date this suit was filed, one or more of the following Anheuser-Busch Companies, LLC products at retail: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

46.     The Pennsylvania plaintiffs will seek certification of the following class ("Pennsylvania Class"):

> All consumers residing in Pennsylvania who purchased at retail in the Commonwealth of Pennsylvania for offsite personal, family or household purposes and not for re-sale within the statutory time period one or more of the following Anheuser-Busch Companies, LLC products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

47.     The Ohio plaintiffs will seek certification of the following class ("Ohio Class"):

> All consumers residing in Ohio who purchased at retail in the State of Ohio for offsite personal, family or household purposes and not for re-sale, within four years before the date this suit was filed, one or more of the following Anheuser-Busch Companies, LLC products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and

"Bud Light Lime."

48.     The Texas plaintiff will seek certification of the following class ("Texas Class"):

> All individuals residing in Texas who purchased in the State of Texas at retail for off-site family, personal or household use and not for re-sale within four years prior to the date of the filling of this action one or more of the following Anheuser-Busch Companies, LLC products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

49.     The New Jersey plaintiffs will seek certification of the following class ("New Jersey Class"):

> All consumers residing in New Jersey who purchased at retail in the State of New Jersey for offsite personal, family or household purposes and not for re-sale within the statutory time period one or more of the following Anheuser-Busch Companies, LLC products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

50.     The Florida plaintiff will seek certification of the following class (Florida Class"):

> All consumers residing in the state of Florida, who purchased at retail in the State of Florida for offsite personal, family, or household purposes and not for resale, during the period beginning four years prior to the date of filing of this complaint through the present (the "Class Period"), one or more of the following Anheuser-Busch Companies, LLC Products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

51.     ***Numerosity***:  AB enjoys a 47.6% market share of the sale of malt beverages in the United States.  Although the number of Class members is not presently known, all Classes are likely to be comprised of millions of consumers.  The Classes are all certainly so numerous that joinder of all members of the Classes is impracticable.

52.     ***Commonality***: As outlined below, common questions of law and fact exist as to

- 18 -

all members of the Classes.  Common questions of fact and law exist because, *inter alia*, Plaintiffs and all Class members purchased AB's alcoholic beverages, which were deliberately misrepresented as containing more alcohol than they actually contained.

53.     ***Adequacy of Representation***:  Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Classes.  Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action.  Plaintiffs have no adverse or antagonistic interests to those of the Classes.  Plaintiffs are willing and prepared to serve the Court and the Class members in a representative capacity, with all of the obligations and duties material thereto, and they are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

54.     ***Typicality***:  Plaintiffs' claims are typical of the claims of the members of the Classes because they purchased and consumed alcoholic beverages that were deliberately misrepresented as containing more alcohol than they actually contained.  Thus, Plaintiffs and all Class members sustained the same injury arising out of AB's common course of conduct in violation of law as complained of herein.  The injury of each Class member was caused directly by AB's uniform wrongful conduct in violation of law as alleged herein.

## **Rule 23(b) (3)**

55.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

56.     ***Common Questions of Law and Fact Predominate***:  The questions of law and fact common to the members of all Classes predominate over any questions affecting only individual members.  These common questions include, but are not limited to:

        a.   Whether AB's products sold to Class members were labeled as containing more alcohol than they in fact contained;

        b.   Whether AB deliberately, and as a matter of corporate policy, mislabeled their

- 19 -

products sold to Class members as containing more alcohol than they actually contained;

    c.   Whether AB engaged in deceptive and unfair business practices related to its mislabeling of the alcohol content of the products it sold to Class members;

    d.   Whether Plaintiffs and Class members are entitled to declaratory, injunctive and/or equitable relief; and

    e.   Whether Plaintiffs and Class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon and/or monetary restitution.

57.    ***Superiority***: A class action is superior to other available methods for the fair and efficient adjudication of the controversy and will create a substantial benefit to both the public and the courts in that:

    a.   The costs of prosecuting millions of Class members' actions individually will vastly exceed the costs for prosecuting the case as several class actions;

    b.   Class certification will obviate the necessity of a multiplicity of claims;

    c.   It is desirable to concentrate the litigation of these claims in a single forum;

    d.   Unification of common questions of fact and law into a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions.

    e.   A class action is a superior means of fairly and efficiently resolving this dispute. Given the complexity of the issues presented here, individual claims are not sufficiently sizeable to attract the interest of highly able and dedicated attorneys who will prosecute them on a contingency basis.  A class action is therefore essential to prevent a failure of justice.

58.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of these class actions that would preclude their maintenance as class actions.

**Rule 23(b)(2)**

59.     This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

60.     Plaintiffs also seek class-wide injunctive and corresponding declaratory relief. AB acted in a manner generally applicable to all Class members by deliberately misrepresenting their products as containing more alcohol than they actually contain.

61.     AB's wrongful conduct and practices, if not enjoined, will subject Class members and other members of the public to substantial continuing harm and will cause irreparable injuries to Class members and members of the public who are damages by AB's conduct.

**CLAIMS ON BEHALF OF THE NATIONWIDE CLASS**

**COUNT 1 (Nationwide Class)**
**Violations of the Missouri Merchandising Practices Act,**
**Mo. Ann. Stat. §§ 407.010, *et seq*.**

62.     Plaintiffs Nina Giampaoli, John Elbert and Tony Maravilla (the "California Plaintiffs") refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

63.     This claim is asserted on behalf of the Nationwide Class as alleged above.

64.     The acts and practices engaged in by AB, and described herein, constitute unlawful and unfair business practices in violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010, *et seq*. ("MMPA").

65.     AB engaged in unlawful and/or unfair practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the labeling (part of the sale, distribution and advertisement) of the malt beverages identified in paragraph 12, in violation of Mo. Rev. Stat. § 407.020 by, among other things:

- 21 -

a.  stating the alcohol content on the labels of its malt beverage products as higher than it actually is, which has the tendency or capacity to mislead, deceive or cheat and tends to create a false impression;

b.  making assertions on the labels of its malt beverages that are not in accord with the facts;

c.  choosing to include statements of alcohol content on the labels of its malt beverages but omitting to state that the represented alcohol content is not the actual alcohol content, a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading;

d.  concealing and suppressing the actual alcohol content of its malt beverages, a material fact, from consumers;

e.  failing to disclose the actual alcohol content of its malt beverages, a material fact that was known to AB or upon reasonable inquiry would have been known to AB;

f.  misrepresenting and failing to disclose the actual alcohol content of its malt beverage products and deliberately watering down the malt beverage products, which offends the public policy of Missouri, is unethical, oppressive or unscrupulous, and presents a risk of or causes substantial injury to consumers.

66.    On information and belief, one or more of the malt beverages identified in paragraph 19 purchased by Plaintiffs and Class members were manufactured in Missouri.  As a result of AB's use or employment of a method, act or practice unlawful under the MMPA, Plaintiffs and National Class members suffered an ascertainable and economic loss in that the products they purchased were worth less than they would have been worth had AB's labeling been truthful and accurate.

- 22 -

## CLAIMS ON BEHALF OF THE CALIFORNIA CLASS

### COUNT 2 (California Class)
### Violations of the Unfair Competition Law,
### California Business & Professions Code § 17200, *et seq.*
### Unlawful Business Practices

67.     The California Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

68.     This claim and all remaining claims are asserted on behalf of the California Class, as alleged above.

69.     Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

70.     Section 17200 specifically prohibits any "unlawful . . . business act or practice." AB violated § 17200's prohibition against engaging in an unlawful act or practice by, inter alia, selling to persons within California products in containers which misrepresent the amount of the alcohol content of such products.

71.     In this regard, AB's manufacturing, marketing, distributing, and selling of malt beverages violated California's Sherman Food, Drug, and Cosmetics Law, Cal. Health & Saf. Code, § 109875, *et seq.* ("Sherman Law").

72.     The relevant part of the Sherman Law declares that "food is misbranded if its labeling is false or misleading in any particular" and further provides that it is unlawful for any person to misbrand any food.  Cal. Health & Saf. Code, §§ 110660, 110765.  Cal. Health & Saf. Code, § 110425 expressly provides that beer sales shall be subject to the misbranding provisions of the Sherman Law.

73.     AB is a corporation and, therefore, a "person" within the meaning of the Sherman Law. Cal. Health & Saf. Code, § 109995.

- 23 -

74.     The business practices alleged above are also unlawful under the Consumers Legal Remedy Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"), which forbids deceptive advertising as set forth below.

75.     Consumers, including California Plaintiffs, necessarily and reasonably relied on the labels of AB's products.  Consumers, including California Plaintiffs, were among the intended targets of such representations.  California Plaintiffs have suffered injury in fact and lost money or property as a result of AB's wrongful actions.

76.     Additionally, the business practices alleged above violate California Penal Code § 496(a) in that AB received property obtained by false pretenses.

77.     On information and belief, AB will continue to misrepresent the alcohol content of its products on its labels in violation of law unless enjoined by this Court from doing so.

78.     As a result of the business practices described above, Business and Professions Code § 17203 entitles California Plaintiffs and California Class members to an order enjoining such future conduct on the part of AB and such other orders and judgments which may be necessary to restore to any person in interest any money paid for AB's malt beverages attributable to AB's wrongful conduct.

79.     The California Plaintiffs and California Class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

## COUNT 3 (California Class)
### Violations of the Unfair Competition Law, California Business & Professions Code § 17200, *et seq.* Unfair Business Practices

80.     The California Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

81.     Section 17200 also prohibits any "unfair . . . business act or practice."  As described in the preceding paragraphs, AB engaged in the unfair business practice of deliberately

- 24 -

manipulating the brewing process and producing malt beverages knowing that their alcohol content is mislabeled. Moreover, AB intentionally misrepresented the actual alcohol content of its products when offering them for sale within California. AB intentionally engaged in this conduct, even though it was, and continues to be, feasible for AB to produce malt beverages extremely close to the exact alcohol levels stated on its labels or to change its labels to match the results of its production. By engaging in such conduct, AB unfairly obtained inflated prices for its products and increased its sales volume by adding more water to its products.

82.     AB's business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of California. Further, any justification for AB's wrongful conduct is outweighed by the adverse effects of such conduct. California Plaintiffs and California Class members could not reasonably avoid the harm caused by AB's wrongful practices. Assuming, *arguendo*, that AB's practices are not express violations of the laws set forth above, those practices fall within the penumbra of such laws and a finding of unfairness can properly be tethered to the public policies expressed therein. Thus, AB engaged in unfair business practices prohibited by California Business & Professions Code § 17200, *et seq*.

**COUNT 4 (California Class)**
**Violations of the Unfair Competition Law,**
**California Business & Professions Code § 17200, *et seq*.**
**Fraudulent Business Practices**

83.     The California Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

84.     Section 17200 also prohibits any "fraudulent business act or practice." AB violated this prong of the UCL by intentionally misrepresenting the actual alcohol content of its products when offering them for sale within California. AB's false statements about the alcohol content of its products were likely to deceive a reasonable consumer within the meaning of California Business and Professions Code § 17200.

- 25 -

**COUNT 5 (California Class)**
<u>**Violations of the Consumer Legal Remedies Act,**</u>
<u>**California Civil Code § 1750, *et seq*.**</u>

85.     The California Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

86.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. (the "CLRA"), which provides protection for California consumers against unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services.

87.     The California Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d).  The malt beverages at issue produced, marketed and sold by AB constitute "goods" as defined by Cal. Civ. Code § 1761(a).

88.     AB's ongoing deliberate manipulation of the brewing process and production of malt beverages, the alcohol content of which is intentionally misstated and inaccurate, violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

      a.  (5) AB's acts and practices constitute misrepresentations that AB's malt beverages have characteristics, benefits or uses which they do not have;

      b.  (7) AB misrepresented that its malt beverages are of a particular standard, quality and/or grade, when they are of another; and

      c.  (9) AB's acts and practices constitute the advertisement of goods without the intent to sell them as advertised.

89.     By reason of the foregoing, California Plaintiffs and the California Class have been harmed, entitling them to injunctive relief, actual and punitive damages, disgorgement and restitution.

90.     Pursuant to § 1782 of the CLRA, by letter dated December 18, 2012, California Plaintiffs Giampaoli and Elbert notified AB in writing of the particular violations of § 1770 of

- 26 -

the CLRA and demanded that AB rectify the actions described above.  Said Plaintiffs sent this notice by certified mail, return receipt requested, to AB's agent for service of process.  A copy of this letter is attached as Exhibit A.[4]

91.     On information and belief, AB's conduct alleged herein was and is fraudulent within the meaning of Cal. Civil Code § 3294(a) and (c)(3), and all such conduct was undertaken with the advanced authorization of officers, directors and/or authorized agents of AB.

92.     Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B are the affidavits of Giampaoli and Elbert showing that this action has been commenced in the proper forum.

### COUNT 6 (California Class)
### Breach of Implied Warranty of Merchantability
### Cal. Com. Code § 2314

93.     The California Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

94.      AB is a "merchant" as to the products within the meaning of California Commercial Code § 2104.  It manufactured, distributed and marketed the malt beverages, which are "goods" within the meaning of California Commercial Code § 2105.  Consequently, pursuant to California Commercial Code § 2314, it impliedly warranted the malt beverages were merchantable, including that they would conform to the promises or affirmations of fact made on their containers or labels.

95.     The California Plaintiffs and Class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with

---

[4] Counsel for Plaintiff Maravilla represents that notice was provided by Mr. Maravilla as well.  A copy of that notice could not be located for inclusion.

respect to the stated percentages of alcohol. As also stated above, AB breached the implied warranty of merchantability accompanying such transactions because California Plaintiffs and Class members did not receive goods that conformed to the promises or affirmations of fact on their containers or labels. Cal. Com. Code § 2314(1) and (2)(f).

96. As provided by California Commercial Code § 2607, Plaintiffs, individually and on behalf of the Class, notified AB in writing of its breach of warranty to give AB the opportunity to cure such breach. Said Plaintiffs sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process. A copy of the letter sent by Plaintiffs Giampaoli and Elbert is attached as Exhibit A.[5]

97. AB has not cured the above breach of warranty. As a proximate result of this breach of warranty by AB, California Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## COUNT 7 (California Class)
## Violation of Magnusson-Moss Warranty Act, 15 U.S.C.A. § 2301, *et seq*.

98. The California Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

99. The California Plaintiffs and California Class members are consumers as defined in 15 U.S.C. § 2301(3).

100. AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

---

[5] Counsel for Plaintiff Maravilla represents that notice was provided by Mr. Maravilla as well. A copy of that notice could not be located for inclusion.

101.    AB's malt beverages, as listed above, are consumer products as defined in 15 U.S.C. § 2301(1).

102.    In connection with their sale of malt beverages, AB gave to California Plaintiffs and all California Class members who purchased the malt beverages an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  Specifically, AB warranted that the malt beverages would conform to the promises or affirmations of fact made on their containers or labels.  Because the malt beverages did not conform to the promises and affirmations of fact about alcohol content made on their containers or labels, AB breached the implied warranty of merchantability.

103.    AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

104.    By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damage to California Plaintiffs and the California Class and is therefore liable to California Plaintiffs and California Class members pursuant to 15 U.S.C. § 2310(d)(1). Pursuant to 15 U.S.C. § 2310(d)(1), California Plaintiffs and the California Class are entitled to recover the damages proximately caused to them by AB's breaches of implied warranty.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), California Plaintiffs and the California Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by California Plaintiffs and the California Class for and in connection with the commencement and prosecution of this action.

105.    Pursuant to 15 U.S.C. § 2310(e), on behalf of themselves and the California Class, California Plaintiffs notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation.  California Plaintiffs sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process.

- 29 -

A copy of the letter from Plaintiffs Giampaoli and Elbert is attached as Exhibit A.[6]  AB has not cured its breach as to California Plaintiffs or any other members of the California Class.

### CLAIMS ON BEHALF OF THE COLORADO CLASS

### COUNT 8 (Colorado Class)
### Violations of the Colorado Consumer Protection Act,
### Colo. Rev. Stat. §§ 6-1-101, *et seq*.

106.    Plaintiff Joel Richardson ("Colorado Plaintiff") refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

107.    The Colorado Consumer Protection Act (CCPA) prohibits deceptive business practices. Colo. Rev. Stat. §§ 6-1-101, *et seq*.

108.    Section 6-1-105(1) specifically prohibits the following deceptive business practices:

(a) Knowingly making false representations as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property; and

(b) Representing that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another.

109.    AB violated § 6-1-105's prohibition against making false representations as to the characteristics, ingredients, particular standard or quality of malt beverages by, inter alia, selling

---

[6] Counsel for Plaintiff Maravilla represents that notice was provided by Mr. Maravilla as well.  A copy of that notice could not be located for inclusion.

- 30 -

to the Colorado Plaintiffs and the Colorado Class within Colorado products in containers which misrepresented the amount of the alcohol content of such products.

110.     Consumers, including Colorado Plaintiff, necessarily and reasonably relied on the labels for AB's products.  Consumers, including Colorado Plaintiff, were among the intended targets of such representations.  Colorado Plaintiff has suffered injury in fact and lost money or property as a result of AB's wrongful actions.

111.     On information and belief, AB will continue to misrepresent the alcohol content of its products in violation of law unless enjoined by this Court from doing so.

112.     As a result of the deceptive business practices described above, Colorado Plaintiff and Colorado Class members are entitled to an order enjoining such future conduct on the part of AB and such other orders and judgments which may be necessary to restore to any person in interest any money paid for AB's malt beverages attributable to AB's wrongful conduct.

113.     Colorado Plaintiff and Colorado Class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

### COUNT 9 (Colorado Class)
### Breach of Implied Warranty of Merchantability
### Colo. Rev. Stat. Ann. § 4-2-314

114.     The Colorado Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

115.     AB is a "merchant" as to the products within the meaning of Colo. Rev. Stat. Ann. § 4-2-104.  It manufactured, distributed and marketed the malt beverages, which are "goods" within the meaning of Colo. Rev. Stat. Ann. § 4-2-105.  Consequently, pursuant to Colo. Rev. Stat. Ann. § 4-2-314, it impliedly warranted the malt beverages were merchantable, including that they would conform to the promises or affirmations of fact made on their containers or labels.

116. The Colorado Plaintiff and Colorado Class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with respect to the stated percentages of alcohol. As also stated above, AB breached the implied warranty of merchantability accompanying such transactions, because Colorado Plaintiff and Colorado Class members did not receive goods that conformed to the promises or affirmations of fact on their containers or labels. Colorado Plaintiff and class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with respect to the stated percentages of alcohol. Colo. Rev. Stat. Ann. § 4-2-314(1) and (2)(f).

117. As provided by Colo. Rev. Stat. Ann. § 4-2-607, Colorado Plaintiff, on his own behalf and on behalf of the Colorado Class, notified AB in writing of its breach of warranty to give AB the opportunity to cure such breach. The Colorado Plaintiff sent this notice by certified mail, return receipt requested, to AB's agent for service of process. A copy of the letter is attached as Exhibit C.

118. AB has not cured the above breach of warranty. As a proximate result of this breach of warranty by AB, the Colorado Plaintiff and the Colorado Class have suffered damages in an amount to be determined at trial.

**COUNT 10 (Colorado Class)**
**Violation of Magnusson-Moss Warranty Act**
**15 U.S.C.A. § 2301, *et seq*.**

119. The Colorado Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

120. The Colorado Plaintiff and Colorado Class members are consumers as defined in 15 U.S.C. § 2301(3).

121. AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

122.    AB's malt beverages, as listed above, are consumer products as defined in 15 U.S.C. § 2301(1).

123.    In connection with their sale of malt beverages, AB gave to the Colorado Plaintiff and all Colorado Class members who purchased the malt beverages an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  Specifically, AB warranted that the malt beverages would conform to the promises or affirmations of fact made on their containers or labels.  Because the malt beverages did not conform to the promises and affirmations of fact about alcohol content made on their containers or labels, AB breached the implied warranty of merchantability.

124.    AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

125.    By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damage to the Colorado Plaintiff and the Colorado Class and is therefore liable to Colorado Plaintiff and Colorado Class members pursuant to 15 U.S.C. § 2310(d)(1).  Pursuant to 15 U.S.C. § 2310(d)(1), Colorado Plaintiff and the Colorado Class are entitled to recover the damages proximately caused to them by AB's breaches of implied warranty.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Colorado Plaintiff and the Colorado Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Colorado Plaintiff and the Colorado Class for and in connection with the commencement and prosecution of this action.

126.    Pursuant to 15 U.S.C. § 2310(e), on behalf of themselves and the Colorado Class, Colorado Plaintiff notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation.  Colorado Plaintiff sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process.  A

- 33 -

copy of the letter is attached as Exhibit C.  AB has not cured its breach as to Plaintiff or any other members of the Colorado Class.

**CLAIMS ON BEHALF OF THE OHIO CLASS**

**COUNT 11 (Ohio Class)**
**Violations of the Ohio Consumer Sales Practices Act**
**Ohio Rev. Code § 1345.01, *et seq.***

127.    Plaintiffs Joseph Hopkins, Miguel Figueroa, and Nicole Mangle ("Ohio Plaintiffs") refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

128.    O.R.C. §1345.02(A) of the Ohio Consumer Sales Practices Act ("OCPSA") prohibits any "supplier" from committing an "unfair or deceptive act or practice in connection with a consumer transaction.

129.    AB is a "supplier" because it is engaged in the business of effecting "consumer transactions," either directly or indirectly, by soliciting and selling goods and services to consumers in Ohio for purposes that are primarily personal, family or household, as those terms are defined in O.R.C. Sections 1345.01(C) and (A) respectively.

130.    The Ohio Plaintiffs and Ohio Class members are "consumers" as defined by O.R.C. § 1345.01(D) of the OCSPA.

131.    O.R.C. §1345.02(B) specifically delineates the following acts or practices of a "supplier" as being deceptive:

> (1) representing "[t]hat the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;" and

> (2) representing "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not."

- 34 -

132.     In addition, O.R.C. §1345.02(C) states that: "(C) In construing division (A) of this section, the court shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended." The FTC has expressed great concern about the accurate labeling of malt beverages with regard to alcohol content in its Orders and comments.

133.     As described in the preceding paragraphs, AB engaged in the unfair business practice of deliberately manipulating the brewing process and producing malt beverages knowing that their alcohol content is mislabeled.  Moreover, AB intentionally misrepresented the actual alcohol content of its products when offering them for sale within Ohio. AB intentionally engaged in this conduct even though it was, and continues to be, feasible for AB to produce malt beverages extremely close to the exact alcohol levels stated on its labels or to change its labels to match the results of its production. In engaging in such conduct, AB unfairly obtained inflated prices for its products, and it increased its sales volume by adding more water to its products.

134.     AB's business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of Ohio. Further, any justification for AB's wrongful conduct is outweighed by the adverse effects of such conduct.  Ohio Plaintiffs and Ohio Class members could not reasonably avoid the harm caused by AB's wrongful practices. Assuming, arguendo, that AB's practices are not express violations of the laws set forth above, those practices fall within the penumbra of such laws and a finding of unfairness can properly be tethered to the public policies expressed therein.

135.     Thus, by selling to consumers within Ohio products in containers which misrepresent the amount of the alcohol content of such products, AB committed deceptive practices which violate O.R.C. § 1345.0(A) and (B) of the OCSPA.

136.    As discussed above, AB's labeling of malt beverages violated, and continues to violate, the FAAA and related regulations and statutes,  see 27 U.S.C. § 201, *et seq*.; 27 C.F.R § 7.54 and 7.71.

137.    Consumers, including Ohio Plaintiffs and Ohio Class members, necessarily and reasonably relied on the labels for AB's products. Consumers, including Ohio Plaintiffs and Ohio Class members, were among the intended targets of such representations. Ohio Plaintiffs and Ohio Class members have suffered injury in fact and lost money or property as a result of AB's wrongful actions.

138.    On information and belief, AB will continue to misrepresent the alcohol content of its products in violation of law unless enjoined by this Court from doing so.

139.    As a result of the business practices described above, the OSCPA, § 1345.09(B) and (D) entitles Ohio Plaintiffs and Ohio Class members to an order enjoining such future conduct on the part of AB and such other orders and judgments which may be necessary to restore to any person in interest any money paid for AB's malt beverages attributable to AB's wrongful conduct.

140.    The Ohio Plaintiffs and Ohio Class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

141.    As a result of the business practices described above, the OSCPA, § 1345.09(B) and (D) entitles the Ohio Plaintiffs and Class members, to an order enjoining such future conduct on the part of AB and such other orders and judgments which may be necessary to restore to any person in interest any money paid for AB's malt beverages attributable to AB's wrongful conduct.

142.    Such acts and practices have been declared unfair and deceptive acts and practices pursuant to and have been declared so in cases including but not limited to *State ex. Rel Brown v. Town & Country Food Distributiors,* Case No. 73-840, (C.P. Sept. 25, 1973); *State ex. Rel.*

*Celebrezze v. Certified Oil, Corp.* (C.P. May 16, 1986). Plaintiffs and Class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

**COUNT 12 (Ohio Class)**
**Violations of the Codified Ordinances of Cleveland**
**COCO § 641, *et seq*.**

143.     The Ohio Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

144.     Section 641.11 of the Codified Ordinances of Cleveland ("COCO") prohibits any "merchant" from committing an "unfair or deceptive trade practice," including "any act, omission or practice undertaken by a merchant which is false, deceptive, fraudulent, or misleading and results or is intended to result in a consumer transaction."

145.     AB is a "merchant" as defined by COCO §§ 641.07 and 641.08 because "it is a "company, corporation and/or other legal entity. . . who regularly deals in real or personal property, goods or services in a manner which results or is intended to result in consumer transactions. Merchant includes, but is not limited to, a seller, lessor, manufacturer, his or her assigns or successors. Merchant includes all other persons who are responsible for any act or practice prohibited by this Code."

146.     The Ohio Plaintiffs and Ohio Class members are "consumers" as defined COCO § 641.03.

147.     A large number of class transactions involving Ohio Plaintiffs and the Ohio Class members occurred within the City of Cleveland making them subject to COCO.

148.     COCO § 641.11 specifically delineates the following acts or practices of a "supplier" as being deceptive:

> (e) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or

- 37 -

that a person has a sponsorship, approval, status, affiliation or connection that he or she does not have;"

(g) "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;"

(q) "engaging in any other act or practice which similarly creates a likelihood of deceiving or misleading the consumer;"

(s) "Any act, omission, or practice inconsistent with laws of the State of Ohio, federal law, and rules and regulations promulgated under either State or federal law, and decisions of the Federal Trade Commission, and Federal and State courts, relating to consumer protection."

149.    In addition, COCO § 653.02 states:

> No person, with intent to sell or in anywise dispose of goods or service, or anything offered directly or indirectly to the public for sale or distribution . . . to induce the public in any manner to enter into any obligation relating thereto, shall make, publish, disseminate, circulate or place before the public . . . in the City of Cleveland, an advertisement of any sort regarding goods, service or representation so offered to the public, which contains any assertion, representation or statement which is untrue, deceptive or misleading . . .

150.    As described in the preceding paragraphs, AB intentionally misrepresented the actual alcohol content of its products on its labels when offering them for sale within Ohio.

151.    Thus, by selling to consumers within Ohio products in containers which misrepresented the amount of the alcohol content of such products, AB committed deceptive practices which violated COCO § 641.11.

152.    Consumers, including Ohio Plaintiffs and Ohio Class members, necessarily and reasonably relied on the labels of AB's products. Consumers, including Ohio Plaintiffs and Ohio Class members, were among the intended targets of such representations.  Ohio Plaintiffs and

- 38 -

Ohio Class members have suffered injury in fact and lost money or property as a result of AB's wrongful actions.

153.    On information and belief, AB will continue to misrepresent the alcohol content of its products in violation of law unless enjoined by this Court from doing so.

154.    As a result of the business practices described above, COCO § 643.11(b) entitles Ohio Plaintiffs and Ohio Class members to an order enjoining such future conduct on the part of AB and such other orders and judgments which may be necessary to restore to any person in interest any money paid for AB's malt beverages attributable to AB's wrongful conduct.

155.    The Ohio Plaintiffs and Ohio Class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

### COUNT 13 (Ohio Class)
### Breach of Express Warranty
### Ohio Uniform Commercial Code, O.R.C. § 1302.26

156.    The Ohio Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

157.    AB's assertion of specific percentages of alcohol content by volume constitutes a warranty of that fact.

158.    The various beers that AB produced that contained specific percentages of alcohol content by volume were in fact false.

159.    AB's affirmation of the specific alcohol content by volume was a promise made by AB to the Plaintiffs and was a basis of the bargain.

160.    The Ohio Plaintiffs notified AB in writing of its breach of warranty, pursuant to O.R.C. §1302.65, to give AB the opportunity to cure such breach.  Plaintiffs sent this notice by certified mail, return receipt requested, to AB's agent for service of process.  A copy of the letter is attached as Exhibit D.

- 39 -

161.    The Ohio Plaintiffs suffered an injury based upon the failure of AB's specific promises relating to the alcohol content by volume where AB made specific statements relating such content and AB has not cured the above breach of warranty.

162.    As a proximate result of this breach of warranty by AB, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

### COUNT 14 (Ohio Class)
### Violation of Magnusson-Moss Warranty Act
### 15 U.S.C.A. § 2301, *et seq.*

163.    The Ohio Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

164.    The Ohio Plaintiffs and Ohio Class members are consumers as defined in 15 U.S.C. § 2301(3).

165.    AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).  AB's malt beverages, as listed above, are consumer products as defined in 15 U.S.C. § 2301(1).

166.    In connection with their sale of malt beverages, AB gave to Ohio Plaintiffs and all Ohio Class members who purchased the malt beverages an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  Specifically, AB warranted that the malt beverages would conform to the promises or affirmations of fact made on their containers or labels.  Because the malt beverages did not conform to the promises and affirmations of fact about alcohol content made on their containers or labels, AB breached the implied warranty of merchantability.

167.    AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

168.    By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damage to Plaintiffs and the Ohio Class and is therefore liable to Ohio Plaintiffs and Ohio Class members pursuant to 15 U.S.C. § 2310(d)(1), .  Pursuant to 15 U.S.C. §

- 40 -

2310(d)(1), Ohio Plaintiffs and the Ohio Class are entitled to recover the damages proximately caused to them by AB's breaches of implied warranty.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Ohio Plaintiffs and the Ohio Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Ohio Plaintiffs and the Class for and in connection with the commencement and prosecution of this action.

169.    Pursuant to 15 U.S.C. § 2310(e), on behalf of themselves and the Ohio Class, Ohio Plaintiffs notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation.  Ohio Plaintiffs sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process.  A copy of the letter is attached as Exhibit D.  AB has not cured its breach as to Ohio Plaintiffs or any other members of the Ohio Class.

### COUNT 15 (Ohio Class)
### <u>Fraudulent Misrepresentation</u>

170.    The Ohio Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

171.    AB intentionally misrepresented the actual alcohol content of its products when offering them for sale within Ohio.

172.    AB deliberately manipulated the brewing process in producing malt beverages knowing that their alcohol content is mislabeled. AB intentionally engaged in this conduct even though it was, and continues to be, feasible for AB to produce malt beverages extremely close to the exact alcohol levels stated on its labels or to change its labels to match the results of its production, and all such conduct was undertaken with the advanced authorization of officers, directors and/or authorized agents of AB.

173.    AB's representations as to the quality and content of its malt beverages and accuracy and truthfulness of its advertising and labeling were material to Ohio Plaintiffs' and Ohio Class members' decision to purchase these AB products.

174.    AB made such misrepresentations with the intent of misleading Ohio Plaintiffs and Ohio Class members to rely on such misrepresentations in their purchase decisions.

175.    Consumers, including Ohio Plaintiffs and Ohio Class members, necessarily and reasonably relied on the labels and advertisements for AB's products. Consumers, including Ohio Plaintiffs and Ohio Class members, were among the intended targets of such misrepresentations.

176.    As the proximate result, Ohio Plaintiffs and Ohio Class members have suffered injury in fact and lost money or property as a result of AB's wrongful actions.

**COUNT 16 (Ohio Class)**
**Unjust Enrichment**

177.    The Ohio Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

178.    The Ohio Plaintiffs and Ohio Class members purchased AB products based on its representations in advertising and on its labels regarding its alcohol content, and a portion of such proceeds was received by AB, the manufacturer.

179.    AB has actual knowledge that it receives revenues as the result of AB product purchases by consumers, like Ohio Plaintiffs and Ohio Class members.

180.    However, AB collected monies for the aforementioned AB brands based on it providing such products with the alcohol content stated on the product labels, but it provided a lesser percentage of alcohol in these products than it represented and consumers paid for.

181.    Thus, Ohio Plaintiffs contend that AB has been unjustly enriched at the expense and to the detriment of Ohio Class members by collecting monies to which it is not entitled and has wrongfully collected.

- 42 -

182.    Although it would be unjust for AB to retain the monies wrongfully collected, AB has failed or refused to refund the amounts wrongfully collected and unlawfully seeks to collect additional amounts to which it is not entitled.

### CLAIMS ON BEHALF OF THE TEXAS CLASS

#### COUNT 17 (Texas Class)
#### Breach of the Implied Warranty of Merchantability

183.    Plaintiff Michael Seidenstein ("Texas Plaintiff") refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

184.    AB is a "merchant" as to AB's malt beverages within the meaning of TEX. BUS. & COM. CODE § 2.104(a).  It manufactured, distributed and marketed the malt beverages, which are "goods" within the meaning of TEX. BUS. & COM. CODE § 2.105(a). Consequently, pursuant to TEX. BUS. & COM. CODE § 2.314, it impliedly warranted the malt beverages were merchantable, including that they would conform to the promises or affirmations of fact made on their containers or labels.

185.    The Texas Plaintiff and Texas Class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their labels with respect to their alcohol content.  AB breached the implied warranty of merchantability accompanying such transactions, because AB's malt beverages did not conform to the promises or affirmations of fact regarding their alcohol content contained on their labels, as set forth above.

186.    As provided by TEX. BUS. & COM. CODE § 2.607(c)(1), Texas Plaintiff, individually and on behalf of the Texas Class, notified AB in writing of its breach of warranty to give AB the opportunity to cure such breach.  Texas Plaintiff sent this notice by certified mail, return receipt requested, to AB's attorney.  A copy of the letter is attached as Exhibit E.

187.    AB has not cured the above breach of warranty.  As a proximate result of this breach of the implied warranty of merchantability by AB, Texas Plaintiff and the Class have

- 43 -

suffered damages measured by the difference in value between the malt beverages as warranted (their purchase prices) and their lower values as delivered.

188.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(8), Texas Plaintiff and the Texas Class are entitled to recover their reasonable attorneys' fees in connection with this cause of action for breach of the implied warranty of merchantability.  The Texas Plaintiff and the Texas Class have complied with TEX. CIV. PRAC. & REM. CODE § 38.002, because  they are represented by an attorney,  they presented  their claim to a duly authorized agent of AB via the  letter  attached  hereto  as  Exhibit  E,  and  payment  was  not  tendered  by  AB  before  the expiration of the thirtieth day after the claim was presented.

**COUNT 18 (Texas Class)**
**Violation of Magnusson-Moss Warranty Act,**
**15 U.S.C. § 2301, *et seq*.**

189.     The Texas Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

190.     The Texas Plaintiff and Texas Class members are consumers as defined in 15 U.S.C. § 2301(3).

191.     AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

192.     AB's malt beverages, as identified above, are consumer products as defined in 15 U.S.C. § 2301(1).

193.     AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

194.     In connection with their sale of the malt beverages in issue, AB gave to Texas Plaintiff and all Texas Class members who purchased those malt beverages an implied warranty as  defined  in  15  U.S.C.  §  2301(7);  namely,  the  implied  warranty  of  merchantability. Specifically, AB warranted that those malt beverages would conform to the promises or affirmations of fact made on their containers or labels.  Because those malt beverages did not

conform to the promises and affirmations of fact about alcohol content made on their labels, AB breached the implied warranty of merchantability.

195.     By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damages to Texas Plaintiff and the Texas Class as described above, and it is, therefore, liable to Texas Plaintiff and Texas Class members for such damages pursuant to 15 U.S.C. § 2310(d)(1).   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Texas Plaintiff and the Texas Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Texas Plaintiff and the Texas Class for and in connection with the commencement and prosecution of this action.

196.     Pursuant to 15 U.S.C. § 2310(e), on behalf of himself and the Texas Class, Texas Plaintiff notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation.   Texas Plaintiff sent this notice by certified mail, return receipt requested, to AB's attorney.   A copy of the letter is attached as Exhibit E. AB has not cured its breach as to Texas Plaintiff or any other members of the Texas Class.

### COUNT 19 (Texas Class)
### Violation of the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA") TEX. BUS. & COM. CODE § 1741, *et seq.*

197.     The Texas Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

198.     The Texas Plaintiff and all members of the Texas Class are "consumers" as defined in DTPA § 17.45(4).   Because AB breached the implied warranty of merchantability as to Plaintiff and all members of the Texas Class, which was a producing cause of economic damages to them, measured as set forth above, they may maintain an action against AB pursuant to DTPA § 17.50(a)(2).

199.    Pursuant to DTPA § 17.50(b)(1), Texas Plaintiff and the members of the Texas Class are entitled to recover their economic damages.  In addition, pursuant to that same section, because AB's breach of the implied warranty of merchantability was committed knowingly, the jury may award Texas Plaintiff and each member of the Texas Class up to three times the amount of their economic damages.

200.    Pursuant to DTPA § 17.50(b)(3), Texas Plaintiff and the Texas Class are entitled to recover the extra profit AB made as a result of its dilution of the malt beverages.

201.    Pursuant to DTPA § 17.50(b)(2), Texas Plaintiff and the Texas Class are entitled to an injunction preventing AB from continuing to violate the implied warranty of merchantability as described herein.

202.    Pursuant to DTPA § 17.50(d), Texas Plaintiff and the members of the Texas Class are entitled to recover their court costs and reasonable and necessary attorneys' fees.

## CLAIMS ON BEHALF OF THE PENNSYLVANIA CLASS

### COUNT 20 (Pennsylvania Class)
### Violations of Pennsylvania Unfair Trade Practices & Consumer Protection Law

203.    Plaintiffs Thomas Greenberg and Gerald Greenberg ("Pennsylvania Plaintiffs") refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

204.    This cause of action is brought pursuant to the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTCPL"), 73 P.S. § 201-1, *et seq.*, which provides protection for Pennsylvania consumers against unfair or deceptive acts or practices in the conduct of any trade or commerce, as defined in 73 P.S. § 201-2(4)(i) - § 201-2(4)(xxi).  *See* 73 P.S. § 201-3.

205.    The Pennsylvania Plaintiffs and Pennsylvania Class members are "persons" as defined by the UTCPL.

206.    AB's ongoing deliberate manipulation of the brewing process and production of malt beverages, the alcohol content of which is intentionally misstated and inaccurate, violates the following subsections of the UTCPL, 73 P.S. § 201-2(4) in these respects:

(a) § 201-2(4)(v)  AB's acts and practices constitute misrepresentations that AB's malt beverages have characteristics, benefits or uses which they do not have;

(b) § 201-2(4)(vii)  AB misrepresented that its malt beverages are of a particular standard, quality and/or grade, when they are of another;

(c) § 201-2(4)(ix)  AB's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised; and

(d) § 201-2(4)(xxi)  AB's acts and practices of misrepresenting the actual alcohol content of its products when offering them for sale in Pennsylvania constitutes deceptive conduct in violation of 73 P.S. 201-2(4)(xxi), as amended in 1996, otherwise known as the "catch-all" provision of Pennsylvania's UTCPL, which allows Plaintiffs to bring a claim for "deceptive" conduct.

207.    By reason of the foregoing, Pennsylvania Plaintiffs and the Pennsylvania Class have been harmed, entitling them to injunctive relief, actual damages, treble damages, and cost and reasonable attorneys' fees.

## COUNT 21 (Pennsylvania Class)
## Breach of the Implied Warranty of Merchantability

208.    The Pennsylvania Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

209.    The Pennsylvania Plaintiffs and Pennsylvania Class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with respect to the stated percentages of alcohol.  AB breached the implied warranty of merchantability accompanying such transactions because Pennsylvania Plaintiffs and

- 47 -

Pennsylvania Class members did not receive goods that conformed to the promises or affirmations of fact on their containers or labels.  See 13 Pa. C.S.A. §§ 2314(a) and 2314(b)(6).

210.    The Pennsylvania Plaintiffs notified AB in writing of its breach of warranty to give AB the opportunity to cure such breach.  Pennsylvania Plaintiffs sent this notice by certified mail, return receipt requested, to AB's agent for service of process. A true and correct copy of said letter is attached hereto, made a part hereof and marked as Exhibit F.

211.    AB has not cured the above breach of warranty.  As a proximate result of this breach of warranty by AB, Pennsylvania Plaintiffs and the Pennsylvania Class have suffered damages in an amount to be determined at trial.

### COUNT 22 (Pennsylvania Class)
### Violation of Magnusson-Moss Warranty Act
### 15 U.S.C.A. § 2301, *et seq.*

212.    The Pennsylvania Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

213.    The Pennsylvania Plaintiffs and the Pennsylvania Class members are consumers as defined in 15 U.S.C. § 2301(3).

214.    AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

215.    AB's malt beverages, as listed above, are consumer products as defined in 15 U.S.C. § 2301(1).

216.    AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

217.    In connection with their sale of the malt beverages in issue, AB gave to Pennsylvania Plaintiffs and all Pennsylvania Class members who purchased those malt beverages an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  Specifically, AB warranted that those malt beverages would conform to the promises or affirmations of fact made on their containers or labels.   Because those malt

- 48 -

beverages did not conform to the promises and affirmations of fact about alcohol content made on their labels, AB breached the implied warranty of merchantability.

218.    By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damages to Pennsylvania Plaintiffs and the Pennsylvania Class as described above, and it is, therefore, liable to Pennsylvania Plaintiffs and Pennsylvania Class members for such damages pursuant to 15 U.S.C. § 2310(d)(1).   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Pennsylvania Plaintiffs and the Pennsylvania Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Pennsylvania Plaintiffs and the Pennsylvania Class for and in connection with the commencement and prosecution of this action.

219.    Pursuant to 15 U.S.C. § 2310(e), on behalf of himself and the Pennsylvania Class, Pennsylvania Plaintiff notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation.   Pennsylvania Plaintiff sent this notice by certified mail, return receipt requested, to AB's attorney.  A copy of the letter is attached as Exhibit F.  AB has not cured its breach as to Pennsylvania Plaintiff or any other members of the Pennsylvania Class.

### CLAIMS ON BEHALF OF THE NEW JERSEY CLASS

#### COUNT 23 (New Jersey Class)
#### Violations of New Jersey Consumer Fraud Act

220.    Plaintiff Brian Wilson ("New Jersey Plaintiff") refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

221.    This cause of action is brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*., which provides protection for New Jersey consumers against unfair or

deceptive acts or practices in connection with the sale or advertisement of any merchandise whether or not the person has in fact been misled, deceived or damaged.  See N.J.S.A. 56:8-2.

222.    The New Jersey Plaintiff and New Jersey Class members are "persons" as defined by N.J.S.A. 56:8-1(d).

223.    Defendant AB is a person as defined by N.J.S.A. 56:8-1(d).

224.    AB's malt beverages offered for sale constitute "merchandise" within the meaning of N.J.S.A. 56:8-1(c).

225.    N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared an unlawful practice; . . ."

226.    At all times relevant hereto, as described more fully above, AB deliberately manipulated the brewing process and production of malt beverages for sale in New Jersey, the alcohol content of which is intentionally misstated and inaccurate on its labels.

227.    Defendant AB has therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission in their advertising, marketing, selling, and distribution of its malt beverages.  Therefore, AB has violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

228.    By reason of the foregoing, New Jersey Plaintiff and the New Jersey Class have been harmed, entitling them to injunctive relief, compensatory damages, liquidated damages, statutory damages and/or punitive damages, and costs and reasonable attorneys' fees.

//

- 50 -

## COUNT 24 (New Jersey Class)
## <u>Breach of Implied Warranty of Merchantability</u>

229.     The New Jersey Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

230.     AB is a "merchant" as to the products within the meaning of New Jersey Commercial Code, N.J.S.A. § 12A:2-104(1).  It manufactured, distributed and marketed the malt beverages, which are "goods" within the meaning of New Jersey Commercial Code, N.J.S.A. § 12A:2-105(1).  Consequently, pursuant to New Jersey Commercial Code, N.J.S.A. § 12A:2-314, it impliedly warranted the malt beverages were merchantable, including that they would conform to the promises or affirmations of fact made on their containers or labels.

231.     The New Jersey Plaintiff and New Jersey Class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with respect to the stated percentages of alcohol.  As also stated above, AB breached the implied warranty of merchantability accompanying such transactions because New Jersey Plaintiff and New Jersey Class members did not receive goods that conformed to the promises or affirmations of fact on their containers or labels.  *See* N.J.S.A. §§ 12A:2-314(a) and 12A:2-314(2)(f).

232.     As provided by New Jersey Commercial Code, N.J.S.A. § 12A:2-607, New Jersey Plaintiffs, individually and on behalf of the New Jersey Class, notified AB in writing of its breach of warranty to give AB the opportunity to cure such breach.  New Jersey Plaintiff sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process. A true and correct copy of said letter is attached hereto, made a part hereof and marked as Exhibit G.

233.     AB has not cured the above breach of warranty.  As a proximate result of this breach of warranty by AB, New Jersey Plaintiff and the New Jersey Class have suffered damages in an amount to be determined at trial.

### COUNT 24 (New Jersey Class)
### Violation of Magnusson-Moss Warranty Act
### 15 U.S.C.A. § 2301, *et seq.*

234.    The New Jersey Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

235.    The New Jersey Plaintiff and  New Jersey Class members are consumers as defined in 15 U.S.C. § 2301(3).

236.    AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

237.    AB's malt beverages, as listed above, are consumer products as defined in 15 U.S.C. § 2301(1).

238.    In connection with their sale of malt beverages, AB gave to New Jersey Plaintiff and all New Jersey Class members who purchased the malt beverages an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  Specifically, AB warranted that the malt beverages would conform to the promises or affirmations of fact made on their containers or labels. Because the malt beverages did not conform to the promises and affirmations of fact about alcohol content made on their containers or labels, AB breached the implied warranty of merchantability.

239.    AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

240.    By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damage to New Jersey Plaintiff and the New Jersey Class and is therefore liable to New Jersey Plaintiff and New Jersey Class members pursuant to the Magnusson-Moss Warranty Act, 15 U.S.C.A. § 2310(d)(1)01.  Pursuant to 15 U.S.C. § 2310(d)(1), New Jersey Plaintiff and the New Jersey Class are entitled to recover the damages proximately caused to them by AB's breaches of implied warranty.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), New Jersey Plaintiff and the New Jersey Class are entitled to recover a sum equal to the

aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by New Jersey Plaintiff and the New Jersey Class for and in connection with the commencement and prosecution of this action.

241.   Pursuant to 15 U.S.C. § 2310(e), on behalf of themselves and the Class, New Jersey Plaintiff notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation.  New Jersey Plaintiff sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process.  A copy of the letter is attached as Exhibit G.  AB has not cured its breach as to New Jersey Plaintiff or any other members of the Class.

## CLAIMS ON BEHALF OF THE FLORIDA CLASS

### COUNT 25 (Florida Class)
### Violation Of FDUTPA, Sections 501.201, *et seq*.
### "Unfair" Conduct.

242.   Plaintiff Lucius Tison King ("Florida Plaintiff") refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

243.   The Florida Plaintiff has standing to pursue this claim as Florida Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

244.   AB's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of the FDUTPA, §§ 501.201, *et seq*.

245.   AB's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers. Additionally, AB's conduct is "unfair" because AB's conduct violated the legislatively declared policies in the FDUTPA. Defendant misled consumers

- 53 -

into believing that their products contained more alcohol than they actually do. AB concealed this fact from consumers by failing to include it on its products' labels.

246.    As a result of AB's "unfair" conduct, Florida Plaintiff and members of the Florida Class spent money on premium-priced products that they would not otherwise have spent and did not receive the increased alcohol content promised by AB.

247.    AB's wrongful business practices alleged herein constitute a continuing course of unfair competition because   AB  marketed or sold its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to their customers.

248.    Florida Plaintiff and the Florida Class seek an order requiring AB to make full restitution of all moneys it has wrongfully obtained from Florida Plaintiff and the Florida Class, along with all other relief permitted under FDUTPA.

## COUNT 26 (Florida Class)
### Violation Of FDUTPA, Sections 501.201, *et seq.*
#### "Deceptive" Conduct

249.    The Florida Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

250.    The Florida Plaintiff has standing to pursue this claim as Florida Plaintiff has suffered injury in fact and has lost money or property as a result of AB's actions as set forth above.

251.    AB's actions as alleged in this Complaint constitute "deceptive" conduct within the meaning of the FDUTPA, Sections 501.201, *et seq*.

252.    AB's business practices, as alleged herein, are "deceptive" because they are likely to deceive consumers, including the Florida Plaintiff and members of the Florida Class.

253.    AB failed to disclose all material information to purchasers of "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager";

- 54 -

"King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime" concerning the true alcohol content of these products and affirmatively concealed the fact by its labeling.

254.    As a result of AB's "deceptive" conduct, Florida Plaintiff and members of the Florida Class spent money on premium-priced beverages that they would not otherwise have spent and did not receive the increased alcohol content promised by AB.

255.    AB's wrongful business practices alleged herein constitute a continuing course of unfair competition because AB marketed and sold its products in a manner that was likely to deceive customers.

256.    The Florida Plaintiff and the Florida Class seek an order requiring AB to make full restitution of all moneys they have wrongfully obtained from Florida Plaintiff and the Florida Class, along with all other relief permitted under FDUTPA.

**COUNT 27 (Florida Class)**
**Violation Of FDUTPA, Sections 501.201, *et seq*.**
**"Unlawful" Conduct**

257.    The Florida Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

258.    The Florida Plaintiff has standing to pursue this claim as Florida Plaintiff has suffered injury in fact and has lost money or property as a result of AB's actions as set forth above.

259.    AB's actions as alleged in this Complaint constitute an "unlawful" conduct within the meaning of the FDUTPA, §§ 501.201, *et seq.*, because AB's actions were "unfair" and "deceptive" as alleged above because they violated the FDUTPA.

260.    As a result of the Defendant's "unlawful" conduct, Florida Plaintiff and members of the Florida Class spent money on premium-priced products that they would not otherwise have spent and did not receive the increased alcohol content promised by AB.

261.    Florida Plaintiff and the Florida Class seek an order requiring AB to make full restitutions of all moneys they have wrongfully obtained from Florida Plaintiff and the Florida Class, along with all other relief permitted under FDUTPA.

**COUNT 28 (Florida Class)**
**Violation Of FDUTPA, Sections 501.201, *et seq*.**
**"Unconscionable" Acts or Practices**

262.    The Florida Plaintiff refers to and incorporates by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

263.    The Florida Plaintiff has standing to pursue this claim as Florida Plaintiff has suffered injury in fact and has lost money or property as a result of AB's actions as set forth above.

264.    AB's actions as alleged in this Complaint constitute "deceptive" conduct within the meaning of the FDUTPA, §§ 501.201, *et seq*.

265.    AB's business practices, as alleged herein, are "unconscionable" because they are likely to deceive consumers, including Florida Plaintiff and members of the Florida Class.

266.    Defendant failed to disclose all material information to purchasers of "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime," concerning the true alcohol content of these products and affirmatively concealed the fact that the alcohol content was lower than the labeled amount.

267.    As a result of AB's "unconscionable" conduct, Florida Plaintiff and members of the Florida Class spent money on premium-priced products that they would not otherwise have spent and did not receive the increased alcohol content promised by AB.

268.    AB's wrongful business practices alleged herein constitute a continuing course of unfair competition because  AB marketed and sold their products in a manner that was likely to deceive customers.

- 56 -

269.    Florida Plaintiff and the Florida Class seek an order requiring AB to make full restitutions of all moneys they have wrongfully obtained from Florida Plaintiff and the Florida Class, along with all other relief permitted under FDUTPA.

## REQUEST FOR RELIEF[7]

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, request the following relief:

a.  An order certifying these matters as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein and appointing Plaintiffs to serve as Class Representatives and Plaintiffs' counsel as counsel for the Classes;

b.  A judgment permanently enjoining Defendant from continuing to misrepresent the alcohol content of its malt beverages, and from pursuing the above policies, acts and practices related to such sales;

c.  A judgment requiring Defendant to fund a corrective advertising campaign in order to remedy its wrongful and illegal conduct;

d.  A judgment awarding restitution of the monies Defendant wrongfully acquired by its wrongful and illegal conduct;

e.  A judgment requiring disgorgement of monies wrongfully obtained as a result of Defendant's wrongful and illegal conduct;

f.  A judgment awarding compensatory damages, including actual and statutory damages, arising from Defendant's wrongful and illegal conduct;

g.  A judgment awarding exemplary damages as allowed by law;

---

[7] Unless otherwise specified, each component of relief applies to all Classes.

h.  A judgment awarding treble damages pursuant to California Penal Code § 496(c) (California Class);

i.  A judgment awarding additional damages under the DTPA (Texas Class);

j.  A judgment awarding compensatory, liquidated, statutory  and/or punitive damages under the NJCFA, arising from Defendant's wrongful and illegal conduct (New Jersey Class);

k.  A judgment awarding reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

l.  A judgment awarding pre-judgment and post-judgment interest at the maximum possible rates at law or in equity; and

m.  A judgment awarding such other and further relief as the Court deems just and proper.


Dated: August 29, 2013                        Respectfully submitted,

                                              **THE MILLS LAW FIRM**
                                              *By: /s/ Robert W. Mills*
                                              Robert W. Mills
                                              Joshua D. Boxer
                                              Corey B. Bennett
                                              880 Las Gallinas Avenue, Suite Two
                                              San Rafael, CA 94903
                                              (415) 455-1326
                                              (415) 455-1327
                                              Robert@millflawfirm.com
                                              Josh@millslawfirm.com
                                              Corey@millslawfirm.com

                                              *Co-Lead Counsel and Attorneys for California Plaintiffs Nina Giampaoli and John Elbert, and Colorado Plaintiff Joel Richardson*

- 58 -

**CLIMACO, WILCOX, PECA, TARANTINO & GAROFOLI CO., L.P.A.**
*By: /s/ John R. Climaco*
John R. Climaco (0011456)
John A. Peca (0011447)
55 Public Square, Suite 1950
Cleveland, Ohio 44ll3
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
japeca@climacolaw.com

*Liaison Counsel and Attorneys for Ohio Plaintiffs Joseph Hopkins, Miguel Figueroa and Nicole Mangle*

**RONALD FREDERICK & ASSOCIATES, CO. L.P.A.**
*By: Ronald Frederick*
1370 Ontario St., Suite 1240
Cleveland, Ohio 44113
Telephone: 216/502-1055
Facsimile: 216/566-9400
RonF@clevelandconsumerlaw.com

*Attorneys for Ohio Plaintiffs Joseph Hopkins, Miguel Figueroa and Nicole Mangle*

**LACKEY HERSHMAN, LLP**
*By:  Roger L. Mandel*
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
(214) 560-2201 (Telephone)
(214) 560-2203 (Facsimile)
rlm@lhlaw.net

*Attorneys for Texas Plaintiff Michael Seidenstein*

- 59 -

**BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER LLP**
*By: Rob Bramson*
2125 Oak Grove Rd., Suite 120
Walnut Creek, CA 94598
(925) 945-0200 (Telephone)
rbramson@bramsonplutzik.com

*Attorneys for California Plaintiffs Nina
Giampaoli and John Elbert*


**CAROSELLI BEACHLER
MCTIERNAN & CONBOY LLC**
*By:  David Senoff*
William R. Caroselli
Lauren C. Fantini
1845 Walnut Street, Fifteenth Floor
Philadelphia, PA 19103
(215) 609-1350
dsenoff@cbmclaw.com
wrc@cbmclaw.com
lfantini@cbmclaw.com

*Attorneys for Pennsylvania Plaintiffs Gerald
and Thomas Greenberg and New Jersey
Plaintiff Brian Wilson*


**WIGGINS, CHILDS, QUINN &
PANTAZIS, LLC**
By: *Dennis Pantazis*
Dennis Pantazis
Joshua R. Gale
Main Street Center
101 North Woodland Blvd.
Suite 600
DeLand FL 32720
(386) 675-6946 (Telephone)
(386) 675-6947 (Fax)
DPantazis@wcqp.com
JGale@WCQP.com

-and-

**LOWE EKLUND WAKEFIELD &
MULVIHILL CO., L.P.A**
*By: James A. Lowe*
610 Skylight Office Tower
1660 West Second Street
Cleveland, OH 44113-1454
(216) 781-2600 (Telephone)
(216) 781-2610 (Facsimile)
jlowe@lewm.com

*Attorneys for Florida Plaintiff Lucius Tison
King*


**<u>THE TERRELL LAW GROUP</u>**
By: *Reginald Terrell*
Post Office Box 13315, PMB # 148
Oakland, CA 94661
(510) 237-9700 (Telephone)
(510) 237-4616 (Fax)
Reggiet2@aol.com

*Attorneys for California Plaintiff Tony
Maravilla*

- 61 -

## ENDORSEMENT FOR A JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: August 29, 2013

Respectfully submitted,
**THE MILLS LAW FIRM**

By: */s/ Robert W. Mills*
Robert W. Mills
Joshua D. Boxer
Corey B. Bennett
880 Las Gallinas Avenue, Suite Two
San Rafael, CA 94903
(415) 455-1326
(415) 455-1327
Robert@millflawfirm.com
Josh@millslawfirm.com
Corey@millslawfirm.com

**CLIMACO, WILCOX, PECA,
TARANTINO & GAROFOLI CO., L.P.A.**
*By: /s/ John R. Climaco*
John R. Climaco (0011456)
John A. Peca (0011447)
55 Public Square, Suite 1950
Cleveland, Ohio 44ll3
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
japeca@climacolaw.com

**RONALD FREDERICK &
ASSOCIATES, CO. L.P.A.**
*By: Ronald Frederick*
1370 Ontario St., Suite 1240
Cleveland, Ohio 44113
Telephone: 216/502-1055
Facsimile: 216/566-9400
RonF@clevelandconsumerlaw.com

*Attorneys for Ohio Plaintiffs Joseph Hopkins, Miguel Figueroa and Nicole Mangle*

- 62 -

**LACKEY HERSHMAN, LLP**
*By: Roger L. Mandel*
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
(214) 560-2201 (Telephone)
(214) 560-2203 (Facsimile)
rlm@lhlaw.net

*Attorneys for Texas Plaintiff Michael Seidenstein*

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER LLP**
*By: Rob Bramson*
2125 Oak Grove Rd., Suite 120
Walnut Creek, CA 94598
(925) 945-0200 (Telephone)
rbramson@bramsonplutzik.com

*Attorneys for California Plaintiffs Nina Giampaoli and John Elbert*

**CAROSELLI BEACHLER MCTIERNAN & CONBOY LLC**
*By: David Senoff*
William R. Caroselli
Lauren C. Fantini
1845 Walnut Street, Fifteenth Floor
Philadelphia, PA 19103
(215) 609-1350
dsenoff@cbmclaw.com
wrc@cbmclaw.com
lfantini@cbmclaw.com

*Attorneys for Pennsylvania Plaintiffs Gerald and Thomas Greenberg and New Jersey Plaintiff Brian Wilson*

- 63 -

**WIGGINS, CHILDS, QUINN &**
**PANTAZIS, LLC**
By: *Dennis Pantazis*
Dennis Pantazis
Joshua R. Gale
Main Street Center
101 North Woodland Blvd.
Suite 600
DeLand FL 32720
(386) 675-6946 (Telephone)
(386) 675-6947 (Fax)
DPantazis@wcqp.com
JGale@WCQP.com

-and-

**LOWE EKLUND WAKEFIELD &**
**MULVIHILL CO., L.P.A**
*By: James A. Lowe*
610 Skylight Office Tower
1660 West Second Street
Cleveland, OH 44113-1454
(216) 781-2600 (Telephone)
(216) 781-2610 (Facsimile)
jlowe@lewm.com

*Attorneys for Florida Plaintiff Lucius Tison*
*King*

**THE TERRELL LAW GROUP**
By: *Reginald Terrell*
Post Office Box 13315, PMB # 148
Oakland, CA 94661
(510) 237-9700 (Telephone)
(510) 237-4616 (Fax)
Reggiet2@aol.com

*Attorneys for California Plaintiff Tony*
*Maravilla*

# EXHIBIT A

# THE MILLS LAW FIRM
### ATTORNEYS AT LAW

880 Las Gallinas Avenue • Suite Two • San Rafael, CA 94903 • Tel (415) 455-1326
Fax (415) 455-1327 • www.millslawfirm.com • info@millslawfirm.com

December 18, 2012

**VIA CERTIFIED MAIL**

AB-InBev
250 Park Avenue
New York, New York 10177

Anheuser-Busch Companies, LLC
One Busch Place
St. Louis, MO 63118

C T Corporation System
818 W Seventh St.
Los Angeles, CA  90017

      **RE:**   *Breach of Implied Warranty*; *Violation of Consumer Legal*
            *Remedies Act; Violation of Magnusson-Moss Warranty Act*

Dear Sir or Madam:

The Mills Law Firm represents Nina Giampaoli and John Elbert, individually and on behalf of all similarly-situated consumers of your malt beverages. On information and belief, our clients contend that Anheuser-Busch's products contain less alcohol by volume than is stated on your containers and labels. These products include, but are not limited to: "Budweiser," "Bud Ice," "Bud Light Platinum," "Michelob," "Michelob Ultra," "Hurricane High Gravity Lager," "King Cobra," "Busch Ice," "Natural Ice," and "Bud Light Lime." By failing to conform to the promises or affirmations of fact on their containers or labels, we believe that Anheuser-Busch has breached its implied warranty of merchantability and the Magnusson-Moss Warranty Act, and we write to give you notice and an opportunity to cure these defects pursuant to California Commercial Code § 2314 and 15 U.S.C. 2310(e).

Additionally, this letter serves as a preliminary notice and demand for corrective action by Anheuser-Busch pursuant to the provisions of California Civil

AB-InBev
Anheuser-Busch Companies, LLC
CT Corporation Systems
December 18, 2012
Page 2

Code §1782, on behalf of our clients, and all other persons similarly situated. By overstating the alcohol content of its products, Anheuser-Busch has violated the following subsections of the California Consumer Legal Remedies Act (Civil Code §1770(a)):

> (5) misrepresentations that Anheuser-Busch's malt beverages have characteristics, benefits or uses which they do not have;
> (7) misrepresentations that Anheuser-Busch's malt beverages are of a particular standard, quality and/or grade, when they are of another;
> (9) advertisement of goods, without the intent to sell them as advertised;
> (16) representations that malt beverages have been supplied in accordance with previous representations when they have not.

Please accept this letter as a demand on behalf of all California purchasers of Anheuser-Busch products sold within the last four years which were sold in containers labeled with overstated alcoholic content to replace, refund or otherwise rectify the violations specified above by January 18, 2013. If our information is incorrect or inaccurate, please notify us immediately.

If you have any questions about these claims, please feel free to contact me at the number above.

Sincerely,

Joshua D. Boxer

# EXHIBIT B

1 | **THE MILLS LAW FIRM**
Robert W. Mills, Esq. (Bar No. 062154)
2 | rwm@millslawfirm.com
Joshua D. Boxer, Esq. (Bar No. 226712)
3 | josh@millslawfirm.com
Corey B. Bennett, Esq. (Bar No. 267816)
4 | corey@millslawfirm.com
880 Las Gallinas Avenue, Suite 2
5 | San Rafael, California 94903
Telephone: (415) 455-1326
6 | Facsimile: (415) 455-1327
-and-
7 |
8 | **BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER**
Robert Bramson, Esq. (Bar No. 102006)
9 | rbramsonrbramson@bramsonplutzik.com
2125 Oak Grove Rd., Suite 120
10 | Walnut Creek, CA 94598
Tel (925) 945-0200
11 | Fax (925) 945-8792
12 | *Attorneys for Plaintiffs Nina Giampaoli & John Elbert*

13 |
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
14 |

15 | NINA GIAMPAOLI and JOHN ELBERT, on behalf of themselves and all others similarly situated | Case No.
**CLASS ACTION**

16 | | **AFFIDAVIT OF VENUE BY PLAINTIFF JOHN ELBERT**

17 | Plaintiffs,

18 | v. | **DEMAND FOR JURY TRIAL**

19 | ANHEUSER-BUSCH COMPANIES, LLC,

20 | Defendant.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

---

**GIAMPAOLI V. ANHEUSER-BUSCH**
**AFFIDAVIT OF VENUE BY PLAINTIFF JOHN ELBERT**

### AFFIDAVIT OF VENUE BY PLAINTIFF JOHN ELBERT

I, JOHN ELBERT, hereby declare that:

    1.    I have personal knowledge of the facts stated herein and could competently testify thereto if called upon to do so.

    2.    I am a Plaintiff in the above-entitled action.

    3.    My Complaint filed in this matter contains causes of action for violations of the Consumers Legal Remedies Act against Anheuser Busch Companies, LLC ("AB"), a Delaware limited liability company doing business nationwide, including in Sonoma County. These causes of action arise out of my purchase of AB products, the alcohol content of which was overstated pursuant to a uniform corporate policy.

    4.    I purchased the subject malt beverages in Sonoma County.

I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the City of Petaluma, Sonoma County, California, on February 22, 2013.

John Elbert

-1-

1  THE MILLS LAW FIRM
   Robert W. Mills, Esq. (Bar No. 062154)
2  rwm@millslawfirm.com
   Joshua D. Boxer, Esq. (Bar No. 226712)
3  josh@millslawfirm.com
   Corey B. Bennett, Esq. (Bar No. 267816)
4  corey@millslawfirm.com
   880 Las Gallinas Avenue, Suite 2
5  San Rafael, California 94903
   Telephone: (415) 455-1326
6  Facsimile: (415) 455-1327
7        -and-
   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER
8  Robert Bramson, Esq. (Bar No. 102006)
   rbramsonrbramson@bramsonplutzik.com
9  2125 Oak Grove Rd., Suite 120
   Walnut Creek, CA 94598
10 Tel (925) 945-0200
   Fax (925) 945-8792
11
   *Attorneys for Plaintiffs Nina Giampaoli & John Elbert*
12

13              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
14

15 NINA GIAMPAOLI and JOHN ELBERT,        Case No.
   on behalf of themselves and all others  CLASS ACTION
16 similarly situated
                                           AFFIDAVIT OF VENUE BY PLAINTIFF
17              Plaintiffs,                 NINA GIAMPAOLI

18 v.                                       DEMAND FOR JURY TRIAL

19 ANHEUSER-BUSCH COMPANIES, LLC.

20              Defendant.

21

22

23

24

25

26

27

28

              GIAMPAOLI V. ANHEUSER-BUSCH
       AFFIDAVIT OF VENUE BY PLAINTIFF NINA GIAMPAOLI

### AFFIDAVIT OF VENUE BY PLAINTIFF NINA GIAMPAOLI

I, NINA GIAMPAOLI, hereby declare that:

1.    I have personal knowledge of the facts stated herein and could competently testify thereto if called upon to do so.

2.    I am a Plaintiff in the above-entitled action.

3.    My Complaint filed in this matter contains causes of action for violations of the Consumers Legal Remedies Act against Anheuser Busch Companies, LLC ("AB"), a Delaware limited liability company doing business nationwide, including in Sonoma County. These causes of action arise out of my purchase of AB products, the alcohol content of which was overstated pursuant to a uniform corporate policy.

4.    I purchased the subject malt beverages in Sonoma County.

I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the City of Sebastopol, Sonoma County, California, on February 22, 2013.

_____
Nina Giampaoli

# EXHIBIT C

# The Mills Law Firm
### ATTORNEYS AT LAW

880 Las Gallinas Avenue • Suite Two • San Rafael, CA 94903 • Tel (415) 455-1326
Fax (415) 455-1327 • www.millslawfirm.com • info@millslawfirm.com

December 19, 2012

**VIA CERTIFIED MAIL**

AB-InBev
250 Park Avenue
New York, New York 10177

Anheuser-Busch Companies, LLC
One Busch Place
St. Louis, MO 63118

C T Corporation System
818 W Seventh St.
Los Angeles, CA  90017

**RE:** *Breach of Implied Warranty; Violation of Colorado Consumer Protection Act; Violation of Magnusson-Moss Warranty Act*

Dear Sir or Madam:

The Mills Law Firm represents Joel Richardson, individually and on behalf of all similarly-situated consumers of your malt beverages.  On information and belief, our client contends that Anheuser-Busch's products contain less alcohol by volume than is stated on your containers and labels.  These products include, but are not limited to: "Budweiser," "Bud Ice," "Bud Light Platinum," "Michelob," "Michelob Ultra," "Hurricane High Gravity Lager," "King Cobra," "Busch Ice," "Natural Ice," and "Bud Light Lime."  By failing to conform to the promises or affirmations of fact on their containers or labels, we believe that Anheuser-Busch has breached its implied warranty of merchantability and the Magnusson-Moss Warranty Act, and we write to give you notice and an opportunity to cure these defects pursuant to Colorado Revised Statutes Annotated § 4-2-314 and 15 U.S.C. 2310(e).

Please accept this letter as a demand on behalf of all Colorado purchasers of Anheuser-Busch products sold within the last four years which were sold in

AB-InBev
Anheuser-Busch Companies, LLC
CT Corporation Systems
December 19, 2012
Page 2

containers labeled with overstated alcoholic content to replace, refund or otherwise
rectify the violations specified above by January 18, 2013.  If our information is
incorrect or inaccurate, please notify us immediately.

    If you have any questions about these claims, please feel free to contact me
at the number above.

Sincerely,

Joshua D. Boxer

# EXHIBIT D

RONALD FREDERICK & Associates Co., L. P. A.

1370 Ontario Street, Suite 1240
Cleveland, Ohio 44113
phone: 216.502.1055
fax: 216.566.9400



January 2, 2013

## VIA CERTIFIED MAIL

AB-InBev
250 Park Avenue
New York, New York 10177

Anheuser-Busch Companies, LLC
One Busch Place
St. Louis, MO 63118

C T Corporation System
1300 East Ninth Street
Cleveland, OH 44114

> **RE:** *Breach of Implied Warranty; Violation of Consumer Sales Practices Act; Violation of Magnusson-Moss Warranty Act*

Dear Sir or Madam:

Ronald Frederick & Associates Co., LPA represents Joseph Hopkins, Miguel Figueroa, and Nicole Mangle, individually and on behalf of all similarly-situated consumers of your malt beverages. On information and belief, our clients contend that Anheuser-Busch's products contain less alcohol by volume than is stated on your containers and labels. These products include, but are not limited to: "Budweiser," "Bud Ice," "Bud Light Platinum," "Michelob," "Michelob Ultra," "Hurricane High Gravity Lager," "King Cobra," "Busch Ice," "Natural Ice," and "Bud Light Lime." By failing to conform to the promises or affirmations of fact on their containers or labels, we believe that Anheuser-Busch has breached its implied warranty of merchantability and the Magnusson-Moss Warranty Act, and we write to give you notice and an opportunity to cure these defects pursuant to Ohio Revised Code 1302.27(A) and 15 U.S.C. 2310(e).

AB-InBev
Anheuser-Busch Companies, LLC
CT Corporation Systems
January 2, 2013
Page 2

Additionally, this letter serves as a preliminary notice and demand for corrective action by Anheuser-Busch pursuant to the provision of Ohio Revised Code 1302.65, on behalf of our clients, and all other persons similarly situated. By overstating the alcohol content of its products, Anheuser-Busch has violated the following subsections of the Ohio Consumer Sales Practices Act, O.R.C. 1345.02(B):

(1) misrepresentations that Anheuser-Busch's malt beverages have "performance characteristics, accessories, uses, or benefits that it does not have;"

(2) misrepresentations that Anheuser-Busch's malt beverages are "of a particular standard, quality, grade, style, prescription, or model, if [they are] not;

(5) representations that malt beverages [have] been supplied in accordance with [] previous representations [when they have] not."

Please accept this letter as a demand on behalf of all Ohio purchasers of Anheuser-Busch products sold within the last four years which were sold in containers labeled with overstated alcoholic content to replace, refund or otherwise rectify the violations specified above by January 18, 2013. If our information is incorrect or inaccurate, please notify us immediately.

If you have any questions about these claims, please feel free to contact me at the number above.

Sincerely,

Ronald I. Frederick, Esq.

RIF/cw

# EXHIBIT E

# LACKEY HERSHMAN

A LIMITED LIABILITY PARTNERSHIP

3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4241
Phone: (214) 560-2201
Fax: (214) 560-2203
www.lhlaw.net

**Roger L. Mandel**
Direct: (214) 560-2238
Email: rlm@lhlaw.net

January 28, 2013

*Via Email to **RUSSELLJACKSON@SKADDEN.COM***
*and Certified Mail, Return Receipt Requested*

J. Russell Jackson
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036-6552

      Re:    *Breach of Implied Warranty in Violation of Texas Law and the Magnusson-Moss*
                  *Warranty Act for Selling of Diluted Beer in Texas*

Dear Mr. Jackson:

      I write on behalf of Michael Seidenstein and a class of all Texas residents who purchased any of the following Anheuser-Busch products in Texas during the four years preceding the date of this letter (the "Class"): Budweiser; Bud Ice; Bud Light Lime; Bud Light Platinum; Busch Ice; Hurricane High Gravity Lager; King Cobra; Michelob; Michelob Ultra; and Natural Ice (the "AB Products"). The purpose of this letter is to put Anheuser-Busch Companies, LLC ("AB"), on notice of its breaches of the implied warranty of merchantability and violations of the Magnusson-Moss Warranty Act and provide it an opportunity to cure such breaches and violations pursuant to 15 U.S.C. § 2310(e) and Texas Business and Commerce Code § 2.607(c)(1).

      More specifically, investigation by Mr. Seidenstein's counsel has revealed that AB, at the end of the brewing process, deliberately dilutes the AB Products so that the actual alcohol content of the AB Products is less than that shown on the AB Products' labels. Because of this, pursuant to Texas Business and Commerce Code § 2.314(b)(6), the AB Products are unmerchantable, as they do not conform to the affirmations of fact made on their labels. Such breach of the implied warranty of merchantability is actionable not only under Texas law but also under the Magnusson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1). This breach of warranty has damaged Mr. Seidenstein and the other members of the Class because the AB Products as delivered were worth less than the AB Products as warranted.

J. Russell Jackson
Skadden, Arps, Slate, Meagher & Flom, LLP
January 28, 2013
Page 2

Because the AB Products have been consumed by Mr. Seidenstein and the members of the Class, cure by repair is not possible. Accordingly, Mr. Seidenstein demands refunds on behalf of himself and the entire Class. In addition, they demand payment of their reasonable attorneys' fees incurred in investigating these claims and making this demand. Finally, they also demand that AB cease and desist from the mislabeling the alcohol content of the AB Products.

If the requested cure has not been agreed upon by AB within thirty (30) days of the date of this letter, Mr. Seidenstein will proceed with a suit against AB, on behalf of himself and the Class. In the interim, if you have any questions, please feel free to call.

Sincerely,

Roger L. Mandel

RLM:tlt

# EXHIBIT F



CAROSELLI
BEACHLER
McTIERNAN
CONBOY

EDWIN H. BEACHLER
WILLIAM R. CAROSELLI
CRAIG E. COLEMAN*
TIMOTHY CONBOY
THOMAS MORE MARRONE****
DAVID A. McGOWAN**
JOHN W. McTIERNAN
DAVID S. SENOFF***
THOMAS G. SMITH

  *  ADMITTED IN PA, NJ & WV
  **  ADMITTED IN PA & OH
  ***  ADMITTED IN PA & NJ
  ****  ADMITTED IN PA, NJ & NY

E-MAIL: INFO@CBMCLAW.COM
    dsenoff@cbmclaw.com

CAROSELLI BEACHLER McTIERNAN & CONBOY LLC
20 STANWIX STREET • SEVENTH FLOOR
PITTSBURGH, PENNSYLVANIA 15222-4802
WWW.CBMCLAW.COM
412-391-9860 • 1-800-222-8816 • Fax 412-391-7453

1845 WALNUT STREET - FIFTEENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
215-609-1350 • 1-877-274-0541 • Fax 215-609-1351

DANIEL K. BRICMONT
RHETT P. CHERKIN
RICHARD C. DeFRANCESCO***
KELLY L. ENDERS
LAUREN C. FANTINI***
KEVIN W. LEE
SUSAN A. MEREDITH
JENNIFER MODELL
FRED C. SOILIS
MELISSA R. SPENCER

OF COUNSEL
CATHERINE A. BAXTER

January 2, 2013

## VIA CERTIFIED MAIL

AB-InBev
250 Park Avenue
New York, New York 10177

Anheuser-Busch Companies, LLC
One Busch Place
St. Louis, MO 63118

C T Corporation System
818 W Seventh St.
Los Angeles, CA 90017

    **RE:**    *Breach of Implied Warranty; Violation of Unfair Trade Practices and Consumer Protection Law; Violation of Magnusson-Moss Warranty Act*

Dear Sir or Madam:

    Caroselli Beachler McTiernan & Conboy represents Thomas Greenberg and Gerald Greenberg, individually and on behalf of all similarly-situated consumers of your malt beverages. On information and belief, our clients contend that Anheuser-Busch's products contain less alcohol by volume than is stated on your containers and labels. These products include, but are not limited to: "Budweiser," "Bud Ice," "Bud Light Platinum," "Michelob," "Michelob Ultra," "Hurricane High Gravity Lager," "King Cobra," "Busch Ice," "Natural Ice," and "Bud Light Lime." By failing to conform to the promises or affirmations of fact on their containers or labels, we believe that Anheuser-Busch has breached its implied warranty of merchantability and the Magnusson-Moss Warranty Act, and we write to give you notice and an opportunity to cure these defects pursuant to Pennsylvania Commercial Code § 2314 and 15 U.S.C. 2310(e).

    Please accept this letter as a demand on behalf of all Pennsylvania purchasers of Anheuser-Busch products sold within the last four years which were sold in containers labeled with overstated alcoholic content to replace, refund or otherwise rectify the violations specified

CAROSELLI
BEACHLER
McTIERNAN
C O N B O Y

January 2, 2013
Page 2

above by February 1, 2013.   If our information is incorrect or inaccurate, please notify us immediately.

If you have any questions about these claims, please feel free to contact me at the number above.

Very truly yours,

DAVID S. SENOFF

DSS/hms

# EXHIBIT G



EDWIN H. BEACHLER
WILLIAM R. CAROSELLI
CRAIG E. COLEMAN*
TIMOTHY CONBOY
THOMAS MORE MARRONE****
DAVID A. McGOWAN**
JOHN W. McTIERNAN
DAVID S. SENOFF***
THOMAS G. SMITH

* ADMITTED IN PA, NJ & WV
** ADMITTED IN PA & OH
*** ADMITTED IN PA & NJ
**** ADMITTED IN PA, NJ & NY

E-MAIL: INFO@CBMCLAW.COM
dsenoff@cbmclaw.com

CAROSELLI
BEACHLER
McTIERNAN
CONBOY

CAROSELLI BEACHLER McTIERNAN & CONBOY LLC
20 STANWIX STREET  •  SEVENTH FLOOR
PITTSBURGH, PENNSYLVANIA 15222-4802
WWW.CBMCLAW.COM
412-391-9860 • 1-800-222-8816  •  FAX 412-391-7453

1845 WALNUT STREET - FIFTEENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
215-609-1350  •  1-877-274-0541  •  FAX 215-609-1351

DANIEL K. BRICMONT
RHETT P. CHERKIN
RICHARD C. DEFRANCESCO***
KELLY L. ENDERS
LAUREN C. FANTINI***
KEVIN W. LEE
SUSAN A. MEREDITH
JENNIFER MODELL
FRED C. SOILIS
MELISSA R. SPENCER

OF COUNSEL
CATHERINE A. BAXTER

January 2, 2013

**VIA CERTIFIED MAIL**
AB-InBev
250 Park Avenue
New York, New York 10177

Anheuser-Busch Companies, LLC
One Busch Place
St. Louis, MO 63118

C T Corporation System
818 W Seventh St.
Los Angeles, CA  90017

      **RE:**   *Breach of Implied Warranty; Violation of the Consumer Fraud Act; Violation of Magnusson-Moss Warranty Act*

Dear Sir or Madam:

     Caroselli Beachler McTiernan & Conboy represents Brian Wilson, individually and on behalf of all similarly-situated consumers of your malt beverages.  On information and belief, our client contends that Anheuser-Busch's products contain less alcohol by volume than is stated on your containers and labels.  These products include, but are not limited to: "Budweiser," "Bud Ice," "Bud Light Platinum," "Michelob," "Michelob Ultra," "Hurricane High Gravity Lager," "King Cobra," "Busch Ice," "Natural Ice," and "Bud Light Lime."  By failing to conform to the promises or affirmations of fact on their containers or labels, we believe that Anheuser-Busch has breached its implied warranty of merchantability and the Magnusson-Moss Warranty Act, and we write to give you notice and an opportunity to cure these defects pursuant to New Jersey Commercial Code § 12A:2-314 and 15 U.S.C. 2310(e).

     Please accept this letter as a demand on behalf of all New Jersey purchasers of Anheuser-Busch products sold within the last four years which were sold in containers labeled with overstated alcoholic content to replace, refund or otherwise rectify the violations specified above by February 1, 2013.  If our information is incorrect or inaccurate, please notify us immediately.



CAROSELLI
BEACHLER
McTIERNAN
C O N B O Y

January 2, 103
Page 2


      If you have any questions about these claims, please feel free to contact me at the number above.


                Very truly yours,


                DAVID S. SENOFF

DSS/hms